MANLEY, APPELLANT, *v.* HARER ET AL., RESPONDENTS.

(No. 5,633.)

(Submitted March 31, 1925. Decided April 25, 1925.)

[235 Pac. 757.]

*Libel — Rules — Damages Recoverable — Province of Jury — Privileged Communications.*

Libel—Language not Libelous *Per Se* not Made so by Innuendo.
   1. Language which is not libelous *per se* cannot be made so by innuendo.
Same—What is and What is not Language Libelous *Per Se.*
   2. Words which upon their face and without the aid of extrinsic proof are injurious to the person concerning whom they are uttered

---

   2. What words are actionable *per se,* see notes in 1 **Am. Dec.** 448; 12 **Am. Dec.** 39; 41 **Am. Rep.** 590; 116 **Am. St. Rep.** 802. See, also, 17 **R. C. L.** 264.

are defamatory *per se*; but if the words are of doubtful significance or derive their libelous character from extraneous facts they are not so and the pleader must allege the meaning intended or set forth such facts by proper averment.

Same—Damages Recoverable.

3. Words defamatory *per se* carry the presumption of falsity and damage and therefore where a publication is libelous *per se* the plaintiff may recover general damages without allegation or proof of special damages; on the contrary, where the words are not actionable *per se*, there can be no recovery of general damages without a pleading of special damages.

Same—Words Libelous *Per Se* must have One Meaning Only.

4. To be characterized as libelous *per se*, the words used must be susceptible of but one meaning.

Same—General and Special Damages—Distinction.

5. General damages in the law of libel are those which the law presumes actually, proximately and necessarily result from the publication of the defamatory matter, while special damages are the natural, but not the necessary, result thereof, and do not follow by implication of law upon proof of the defamatory words.

Same—Province of Jury.

6. Where alleged libelous language is susceptible of two meanings, one defamatory and the other not, it is for the jury to determine in what sense it was used, and it may disregard the advice of the court as to whether it is one or the other.

Same—Words Imputing Dishonesty or Corruption or Unfaithfulness to Employer Libelous *Per Se*.

7. Words which in themselves injuriously affect one in his profession, business or employment or which impute dishonesty or corruption to an individual or which charge him with unfaithfulness to his employer are actionable *per se*.

Same—Published Language as to Wrongdoing of Road Supervisor Analyzed.

8. *Held*, that statements in a petition by taxpayers to the board of county commissioners asking for the removal of a road supervisor on the grounds "that he does not give to the county value received for the money he draws from the public funds; that when working or pretending to be working, he will have teams standing on the public road but not working at least fifty per cent of the time," were not libelous *per se*; but that the statement that "he does not put in full time, but draws warrants for full time," charging him with defrauding the county, was so in effect.

---

3. See 17 R. C. L. 391.

5. See 17 R. C. L. 429, 431.

6. Effect of provisions that jury shall determine law and facts in libel cases, see notes in 33 L. R. A. (n. s.) 206, 216; 51 L. R. A. (n. s.), 369. See, also, 17 R. C. L. 425.

7. See 17 R. C. L. 290, 294.

8. Criminal responsibility for libel or slander of public officer, see note in 19 A. L. R. 1491. See, also, 17 R. C. L. 301.

·[73 Mont. 253.]

Same—What not Privileged Communication.

    9. A communication addressed by taxpayers to the board of county commissioners asking for the removal of a road supervisor and containing a libelous statement was not privileged under section 5692, subdivision 3, Revised Codes of 1921, where made with malice.

---

    Libel and Slander, 36 **C. J.**, sec. 17, p. 1150, n. 76; p. 1151, n. 82, 83, 84; sec. 69, p. 1180, n. 2, 5; sec. 70, p. 1182, n. 19; sec. 93, p. 1190, n. 84; sec. 246, p. 1264, n. 35; 37 **C. J.**, sec. 329, p. 22, n. 16; sec. 330, p. 23, n. 25; sec. 331, p. 25, n. 31, 32; sec. 352, p. 33, n. 70; sec. 353, p. 36, n. 26; sec. 516, p. 91, n. 35; sec. 547, p. 102, n. 36; p. 103, n. 39.

*Appeal from District Court,· Broadwater County; W. L. Ford, Judge.*

    ACTION by William Manley against Henry Harer and others. Judgment for defendants and plaintiff appeals. Reversed and remanded.

    *Mr. C. E. Pew,* for Appellant, submitted a brief and argued the cause orally.

    *Mr. E. H. Goodman, Mr. John A. Matthews, Mr. Fred W. Schmitz,* and *Mr. Frank T. Hooks,* for Respondents, submitted a brief; *Mr. Schmitz* and *Mr. Hooks* argued the cause orally.

    MR. CHIEF JUSTICE CALLAWAY delivered the opinion of the court.

    This is an action to recover damages for libel. The com- ·plaint embraces three causes of action. Defendants demurred generally to each. The demurrer having been sustained and the plaintiff having refused to plead further the court ordered judgment entered against him, and from this judgment he has appealed.

---

    9. What are privileged communications, see notes in 15 **Am. Dec.** 232; 31 **Am. Rep.** 708.

    Complaint against public officer or employee to person or body having power in the matter as privileged, see notes in 19 **Ann. Cas.** 1196; **Ann. Cas.** 1913C, 824; **Ann. Cas.** 1917C, 29; **Ann. Cas.** 1918B, 977. See, also, 17 **R. C. L.** 361.

The three causes of action are so nearly alike that in so far as the instant problem is involved a discussion of one will suffice for all. The innuendo in the second and third is somewhat different from that in the first, but if the language which is the basis of each clause is libelous *per se* the difference in innuendo need not be considered in this opinion.

If this language is not libelous *per se*, it cannot be made so [1] by innuendo. (*Brown* v. *Independent Pub. Co.*, 48 Mont. 374, 138 Pac. 258.)

In the first cause of action, for convenience hereafter referred to as the complaint, the plaintiff avers that for more than five years last past he has been and still is a resident of Broadwater county "following the occupation of and engaged in teaming, road construction, and repair work of a similar nature, and thereby earning a livelihood for himself and his family"; and that ever since the first day of March, 1921, and up to the time of the filing of the complaint he was employed by the board of county commissioners of Broadwater county as a road supervisor. That on or about the 6th of June, 1922, the defendants, acting jointly and in concert, deceitfully, falsely and maliciously and without privilege, published of and concerning the plaintiff the following libelous writing to-wit:

"To the Honorable Board of County Commissioners of Broadwater County:

"1. We, the undersigned taxpayers and residents of the said county, respectfully show to your honorable body that one William Manley has for a long time past been employed as road supervisor in the lower part of the county, but that in said position he does not give to the county value received for the money he draws from the public funds; that he does not put in full time, but draws warrants for full time; that when working, or pretending to be working, he will have teams standing on the public road, but not working at least 50 per cent of the time. 2. Where-

fore, believing that the taxpayers should receive adequate returns for their money and that, for the large amounts spent on public road work, as much work should be accomplished as possible, that the complaint be not justified that the county gets not to exceed 50 per cent value on road work, and believing that the board desires to work the roads as economically as possible. 3. We respectfully petition your honorable body that the said William Manley be relieved of his said position, be not again employed on county work.''

Plaintiff avers that the statements that in his position as road supervisor he does' not give to the county value received for the money he draws from the public funds, that he does not put in full time, but draws warrants for full time, that when working or pretending to be working he will have teams standing on the public road, but not working at least fifty per cent of the time, are false and untrue; and that the publication at all times since the same was made, exposed and still exposes plaintiff to hatred, contempt, ridicule and obloquy, and causes him to be shunned and avoided, impeaches his reputation for honesty and integrity, and at all said times had and still has a tendency to injure him in his occupation, to his damage, *etc.*

Counsel for defendants argue that none of the language is actionable *per se*, and as special damages are not pleaded the complaint does not state facts sufficient to constitute a cause of action. On the other hand, plaintiff's counsel, while conceding that he has not pleaded special damages, argues, first, that the language is actionable *per se*; second, even if it be conceded that the language is susceptible of two meanings, one defamatory and one not, it is for the jury to determine the sense in which it was used (citing *D'Autremont* v. *McDonald*, 56 Mont. 522, 185 Pac. 707, and *Daniel* v. *Moncure*, 58 Mont. 193, 190 Pac. 983), and consequently the complaint states a cause of action upon either theory.

73 Mont.—17

In the language of our statute, libel is a false and unprivileged publication by writing, printing, picture, effigy or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation. (Sec. 5690, Rev. Codes 1921.)

Words are defamatory *per se* which upon their face and [2] without the aid of extrinsic proof are injurious to the person concerning whom they are spoken. If the injurious character of the words does not appear from their face when taken in their plain and natural meaning and according to the sense in which they appear to have been used they are not defamatory *per se* but are said to require innuendo. (36 C. J. 1150.)

"When the words are unequivocal in their import, and obviously defamatory, it is not necessary to employ colloquium or innuendo to explain their application and meaning; but if the words be of doubtful significance, or derive their libelous character not from their own intrinsic force, but from extraneous facts it is necessary to allege the meaning intended, or set forth such extraneous facts by proper averments." (*Paxton* v. *Woodward,* 31 Mont. 195, 107 Am. St. Rep. 416, 3 Ann. Cas. 546, 78 Pac. 217.) "Words which are defamatory *per se* do not need an innuendo, and, conversely, words which do need an innuendo, are not defamatory *per se.*" (36 C. J. 1151.)

When the publication is libelous *per se* the plaintiff may [3, 4] recover general damages without allegation or proof of special damages. (*Paxton* v. *Woodward, supra.*) The reason is that words defamatory *per se* carry the presumption of falsity and damage. (36 C. J. 1151; 17 R. C. L. 264.)

To be characterized as libelous *per se* the words as used must be susceptible of but one meaning. (*Brown* v. *Inde-*

*pendent Pub. Co., supra; Shaffroth* v. *Tribune,* 61 Mont. 14,
201 Pac. 271.) If the words are not actionable *per se* there
can be no recovery of general damages because in such a
case the law in the absence of pleading and proof to that
end, does not presume falsity nor damage. Where the words
are not actionable *per se,* the pleader must state the facts
which show them to be libelous and likewise must plead the
resulting injury; he must plead the facts which show the
character and extent of the injury he claims to have sus-
tained: he must plead special damages. (*Ledlie* v. *Wallen,*
17 Mont. 150, 42 Pac. 289; *Lemmer* v. *Tribune,* 50 Mont.
559, 148 Pac. 338.) This is why it is said that a com-
plaint based upon words that are defamatory not *per se*
but *per quod* (3 Blackstone's Commentaries, 134; Black's
Law Dictionary, "Per Quod"), in the absence of an allega-
tion of special damages does not state a cause of action (*Brown*
v. *Independent Pub. Co., supra; Nolan* v. *Standard Pub. Co.,*
67 Mont. 212, 216 Pac. 571). (Although, if one does not
keep the foregoing distinction in mind it might appear that
the question whether the damages recoverable are general
or special is not a material element in stating a cause of
action for libel.)

As is indicated above the law recognizes two classes of dam-
[5] ages in suits for defamation: General damages are those
which the law presumes actually, proximately and necessarily
result from the publication of the defamatory matter, while
special damages are the natural, but not the necessary, result of
the alleged wrong, and do not follow by implication of law upon
proof of the defamatory words. (36 C. J. 1151; 17 R. C. L.
264.)

Where the language is susceptible of two meanings, one
[6] defamatory and the other not, it is for the jury to deter-
mine in what sense it was used. (*D'Autremont* v. *McDonald,*
56 Mont. 522, 185 Pac. 707; *Daniel* v. *Moncure,* 58 Mont. 193,
190 Pac. 983.) This does not refer to language defamatory

*per se* but *per quod* (if defamatory at all), and therefore the two cases last cited do not conflict in any way with the *Brown* and *Shaffroth Cases* as counsel for plaintiff contends. It is true that a jury may disregard the court's advice as to whether or not words are libelous (*Harrington* v. *Butte Miner Co.,* 48 Mont. 550, Ann. Cas. 1915D, 1257, 51 L. R. A. (n. s.) 369, 139 Pac. 451), but that does not affect the proposition here considered.

Was the publication libelous *per se?* To determine that [7] matter, as this court said in *Cooper* v. *Romney,* 49 Mont. 119, Ann. Cas. 1916A, 596, 141 Pac. 289, ''we need not go beyond fundamental principles as asserted and maintained by almost unbroken authority.'' Indeed, we need not go beyond the express words of the statute: Libel is a false and unprivileged publication by writing which exposes any person to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation. This definition is but a statement of the common-law rule (16 Cal. Jur. 25), and ''may be said to include whatever tends to injure the character of an individual, or blacken his reputation, or imputes fraud, dishonesty, or other moral turpitude, or reflects shame, or tends to put him without the pale of social intercourse.'' (*Iron Age Pub. Co.* v. *Crudup,* 85 Ala. 519, 5 South. 332; *Wofford* v. *Meeks,* 120 Ala. 349, 87 Am. St. Rep. 66, 55 L. R. A. 214, 30 South. 625; *Quinn* v. *Review Pub. Co.,* 55 Wash. 69, 133 Am. St. Rep. 1016, 19 Ann. Cas. 1077, 104 Pac. 181; note to *Nichols* v. *Daily Reporter Co.,* 116 Am. St. Rep. 796.) If the words employed in the alleged libelous publication impute dishonesty or corruption to an individual, they are actionable *per se.* (*Wofford* v. *Meeks, supra; Quinn* v. *Review Pub. Co., supra.*)

Written words which charge a person with dishonest conduct and unfaithfulness to his employer are libelous *per se.* (*Burghardt* v. *Scioto Sign Co.,* 191 Iowa, 384, 179 N. W. 77; 36 C. J. 1180.) Language charging that one has defrauded the county

is actionable *per se.* (*Farley* v. *McBride,* 74 Neb. 49, 103 N. W. 1036; *Shaw* v. *Crandon Printing Co.,* 154 Wis. 601, 143 N. W. 698.) In short, words which in themselves injuriously affect one in his profession, business or employment—in his occupation—are actionable *per se.* (17 R. C. L. 294, 295; 36 C. J. 1180.)

In considering the publication complained of we take the language in which it is couched without the aid of innucndo and construe it "in its relation to the entire article in which it appears, for its ordinary meaning may be limited or changed by the circumstances, or by qualifications expressly annexed to its use" (*Cooper* v. *Romney, supra*), and we view the entire statement "as a stranger might look at it without the aid of special knowledge possessed by the parties considered (*Denney* v. *Northwestern Credit Assn.,* 55 Wash. 331, 104 Pac. 769)." (*Brown* v. *Independent Pub. Co., supra.*)

According to plaintiff's averments he followed the occupation of teaming and road construction work and for two years or more he had been a road supervisor serving under appointment by the board of county commissioners. As road supervisor he was required to take the customary oath of office and to give a bond approved by the board for the faithful performance of his duties. (Sec. 1624, Rev. Codes 1921.)

The defendants represented to the board of county commissioners that the plaintiff, naming him, had for a long time been employed as a road supervisor, saying "but that in said position he does not give to the county value received for the money he draws from the public funds; that he does not put in full time, but draws warrants for full time; that when working, or pretending to be working, he will have teams standing on the public road but not working at least 50 per cent of the time." The assertion that the plaintiff "does not give the county value received for the money he draws from the public funds" is not libelous *per se.* Seemingly it amounts to a mere expression of opinion. Nor can it be said that the assertion "that when working, or pretending to be

working, he will have teams standing on the public road, but not working at least 50 per cent of the time," is libelous *per se.* To be sure, the phrase "pretending to be working" is pregnant with reflection upon plaintiff's method of carrying on the work. But anyone who has knowledge of the work necessary to be done by road supervisors in Montana—and most people who travel the public roads have knowledge more or less definite on the subject—knows that generally it is necessary for the supervisor to employ a team in the performance of his work; also that frequently during the working periods there is little for a team to do—for illustration, when the supervisor is constructing a bridge or culvert, or where excavation is being done with pick and shovel, or where timber construction is in process along mountain grades.

But the assertion that the plaintiff "does not put in full time, but draws warrants for full time," is a statement of fact and it means, if it means anything, that the plaintiff is dishonest, that he defrauds the county.

It is the supervisor's sworn duty to charge the county for his work not more than $6 per day for eight hours' labor, and "the time taken in going to or from his home to the place of labor shall not be included within such period of eight hours." (Sec. 1624, *supra.*) The duties of a supervisor with respect to the roads are somewhat comprehensive. (Sec. 1525, Rev. Codes 1921.) He is required to take charge of all highways, bridges and causeways within his district; he must make and file with the county clerk verified reports quarterly, or oftener if required by the county commissioners, showing the number of days he has been employed during the previous three months and when and how he has been employed, the number of days' labor performed upon the public highways in his district, when and by whom performed, the character and kind of work done, and so forth; he must "keep a correct account of all labor performed and animals, implements, or material furnished by himself or others upon the public highways."

He is paid by warrants drawn against the county funds, upon verified claims properly itemized. (Sec. 4605, Rev. Codes 1921.) When the specific requirements of the statutes above quoted are considered respecting what shall be deemed a day's work, that the supervisor shall keep a correct account of the labor performed, that he shall make verified reports concerning the same, and must present verified claims for his services in order to obtain warrants in payment therefor, the gravity of the representation made by the defendants when they charged that the plaintiff "does not put in full time, but draws warrants for full time" is manifest. Moreover, this is emphasized by the context. The words last quoted in the light of the context are not susceptible of any other reasonable construction than that plaintiff while working only part time presented to the county commissioners for allowance and payment claims for work based upon his having worked full time, upon which he drew warrants based upon full time; necessarily claims so presented were false and fraudulent. That the defendants charged plaintiff with defrauding the county is too clear to admit of discussion. That the charge is susceptible of exposing the plaintiff to hatred, contempt, ridicule and obloquy, that it blames him for a dishonest action, and that it has a tendency to injure him in his occupation seems incontrovertible. If the charge is true, these defendants were warranted in making it and if true the plaintiff should not be retained as road supervisor.

But defendants contend that because they are taxpayers [9] interested in the county's welfare, and the communication was made to the board of commissioners it was and is privileged, and they rely upon subdivision 3 of section 5692, Revised Codes of 1921, which provides in part that a communication is privileged where made, without malice, to a person interested therein by one who is also interested. It is said that as the defendants were making representations to the county commissioners concerning the management of the public roads and

264        MANLEY *v*. HARER ET AL.       ·    [Mår. T. '25

[73 Mont. 253.]

with the idea of protecting the public interest, and particularly the public funds, they are protected by the statute. But it is directly alleged that the publication was made "deceitfully, falsely and maliciously and without privilege"; and only a communication made without malice is privileged under the provisions of the above statute. If the assertion that the plaintiff does not put in full time, but draws warrants for full time admittedly was made deceitfully, falsely and maliciously, it was not privileged. (*Robinson* v. *Coulter*, 215 Mass. 566, 102 N. E. 938.) That which is properly pleaded the defendants by their demurrer admit; they must be held therefore to admit that the communication was made deceitfully, falsely and maliciously until they controvert such allegations by answer. The court was in error in sustaining the demurrer to each cause of action.

The judgment is reversed and the cause is remanded, with direction to the district court to overrule the demurrer.

*Reversed and remanded.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

MR. JUSTICE MATTHEWS, being disqualified, did not hear the argument and takes no part in the foregoing decision.