BURR, Appellant, *v.* WINNETT TIMES PUBLISHING CO. et al., Respondents.

(No. 6,120.)

(Submitted June 7, 1927.   Decided July 10, 1927.)

[258 Pac. 242.]

*Libel—Newspaper Articles—Publication of Charges Against Public Officer—When Libel Per Se.*

Libel—Newspaper Articles—General Demurrer Improperly Sustained if Allegations Relating to Any One of a Number of Alleged Libelous Articles Sufficient to State Cause of Action.

1. A general demurrer to a complaint in an action for libel in which a number of alleged libelous newspaper articles are set forth

[80 Mont. 70.]

in one cause of action may not be sustained if any one of such articles, with the allegations in regard thereto, is sufficient to state a cause of action.

Same—What Constitutes Libel Per Se.

2. A libel is libel per se where the words published are actionable because they, of themselves, are opprobrious; in such an action the language used must be susceptible of but one meaning and that an opprobrious one when construed in their usual, popular and natural meaning and common acceptation, i. e., in the sense in which laymen of ordinary intelligence would understand them.

Same—Construction of Allegations of Complaint.

3. In an action for libel, the alleged defamatory matter must be construed as an entirety and with reference to the remaining portions of the publication.

Same—Innuendo—When Unnecessary.

4. An innuendo in the law of libel is a statement in the complaint relative to the construction which plaintiff himself puts upon the alleged defamatory matter; where a defamatory meaning is apparent on the face of the libel, no innuendo is necessary, and if the publication is not libelous per se, the innuendo cannot make it such.

Same—Absence of Allegation of Special Damages—Effect.

5. Where special damages are not pleaded in an action for libel, the complaint does not state a cause of action unless the alleged libel be libel per se.

Same—Public Officers—What Publications not Libelous Per Se.

6. A newspaper article which, in speaking of a county officer up for re-election, is merely an expression of opinion of the writer of plaintiff's mental caliber but casts no aspersion upon him, or which criticises his official acts and soundness of judgment as an official, or which charges him with putting in a bill against the county, but does not say that he illegally obtained county money or tried to do so, is not libelous per se.

Same.

7. *Held,* that a newspaper article published concerning a member of a board of county commissioners seeking re-election, referring to "the interesting way he has of prying open the lid of the county strong box" and likening him to "Kaiser Bill," so far as the former statement is concerned, if libelous, was libelous per quod, requiring an innuendo to explain it, and not per se, and that the latter was simply sarcasm and not libelous.

Same—Defamatory Charge may be Made in Language Impliedly so Plain as to Constitute Libel Per Se.

8. A defamatory charge does not have to be made in direct, positive language but may impliedly be made so plainly that it can have only one meaning which may constitute libel per se.

Same—Falsely Charging County Commissioner With Violation of Statutes is Libel Per Se.

9. A newspaper article falsely charging a member of a board of county commissioners, in conjunction with the other members, with conducting county business behind closed doors, with keeping county records from public inspection, and with secretly passing a bond issue in a large amount at the highest legal rate of

2.   See 17 R. C. L. 264.
4.   See 17 R. C. L. 396.
9.   See 17 R. C. L. 301.

interest, in violation of statutory provisions, whether thus charging a misdemeanor or not, is libelous per se, such charges being sufficient to deprive an official of the benefits of public confidence.

[1]   Libel and Slander, 36 C. J., sec. 3, p. 1145, n. 46; 37 C. J., sec. 326, p. 21, n. 77.
[2]   Libel and Slander, 36 C. J., sec. 17, p. 1151, n. 72, 73, 74, 76; sec. 21, p. 1155, n. 61, p. 1157, n. 67.
[3]   Libel and Slander, 36 C. J., sec. 22, p. 1157, n. 71.
[4]   Innuendo, 32 C. J., p. 576, n. 31.   Libel and Slander, 36 C. J., sec. 9, p. 1148, n. 20; 37 C. J., sec. 330, p. 23, n. 25.
[5]   Libel and Slander, 37 C. J., sec. 331, p. 25, n. 31; sec. 358, p. 35, n. 14.
[6]   Libel and Slander, 36 C. J., sec. 28, p. 1164, n. 25.
[7]   Libel and Slander, 36 C. J., sec. 20, p. 1154, n. 39; sec. 28, p. 1164, n. 25.
[8, 9]   Libel and Slander, 36 C. J., sec. 16, p. 1150, n. 71 New; sec. 20, p. 1153, n. 32; sec. 70, p. 1181, n. 11, 13, p. 1182, n. 16; 37 C. J., sec. 401, p. 50, n. 99.   Obloquy, 29 Cyc., p. 1313, n. 83, 84.

*Appeal from District Court, Petroleum County; Edgar J. Baker, Judge.*

Action for libel by George A. Burr against the Winnett Times Publishing Company and another. From a judgment of dismissal, plaintiff appeals. Reversed and remanded, with direction to overrule demurrer to complaint.

*Messrs. Belden & DeKalb* and *Mr. Merle C. Groene,* for Appellant, submitted a brief; *Mr. Groene* argued the cause orally.

Citing: *Bettner* v. *Holt,* 70 Cal. 270, 11 Pac. 713; *Tonini* v. *Cevasco,* 114 Cal. 266, 46 Pac. 103; *Daniel* v. *Moncure,* 58 Mont. 200, 190 Pac. 983; *Cooper* v. *Romney,* 49 Mont. 125, Ann. Cas. 1916A, 596, 141 Pac. 289; *Manley* v. *Harer,* 73 Mont. 260, 235 Pac. 757; *Jarman* v. *Rea,* 137 Cal. 339, 70 Pac. 216; *Shaw* v. *Crandon Printing Co.,* 154 Wis. 601, 143 N. W. 698; *Ervin* v. *Record Publishing Co.,* 154 Cal. 79, 18 L. R. A. (n. s.) 623, 97 Pac. 21; *Norfolk Post Corp.* v. *Wright,* 140 Va. 735, 40 A. L. R. 580, 125 S. W. 656; *Schomberg* v. *Walker,* 132 Cal. 224, 64 Pac. 290; *Tonini* v. *Cevasco,* 114 Cal. 266, 46 Pac. 103; *Stevens* v. *Snow,* 191 Cal. 58, 214 Pac. 968; 36 C. J. 1153, 1155, 1180; 16 Cal. Jur. 46, 57.

*Mr. Ralph J. Anderson,* for Respondent, submitted a brief and argued the cause orally.

Citing: *Cohen* v. *New York Times Co.,* 153 App. Div. 242, 138 N. Y. Supp. 206; *Phoenix Printing Co.* v. *Robertson,* 80 Okl. 191, 195 Pac. 487; *Oklahoma Publishing Co.* v. *Kendall,* 96 Okl. 194, 221 Pac. 762; *Ruhland* v. *Cole,* 143 Wis. 367, 127 S. W. 959; *Wooten* v. *Martin,* 140 Ky. 781, Ann. Cas. 1912B, 407, 131 S. W. 783; *Harrison* v. *Manship,* 120 Ind. 43, 22 N. E. 87; *Christal* v. *Craig,* 80 Mo. 367; *Mayrant* v. *Richardson,* 1 Nott. & McC. (S. C.) 347, 9 Am. Dec. 707; *Brown* v. *Independent Publishing Co.,* 48 Mont. 374, 138 Pac. 258; 36 C. J. 1208.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action for alleged libel *per se.* No special damages are alleged. It is agreed by counsel for each side that the alleged libels must be libels *per se* or plaintiff cannot recover. Counsel for plaintiff (appellant), in their brief, say: "We submit this matter to this court upon the proposition that the publications complained of are libelous *per se* and, if this court does not agree with us in this respect, the judgment of the lower court must be affirmed."

Plaintiff was a farmer and a member and the chairman of the board of county commissioners of Petroleum county. He was a candidate for nomination to succeed himself, as a member of the board. The defendant corporation published, in Petroleum county, the "Winnett Times," a weekly newspaper. Defendant Doherty was editor and manager of the newspaper.

In his amended complaint, plaintiff alleged the publication in the newspaper, at different times, of five articles, alleged to have been published of and concerning him. They are set out in full in the amended complaint. He alleged further that each of the articles was false, unprivileged and defamatory; that each reflected upon him as a member of the board

of county commissioners and as chairman thereof and as an individual seeking renomination for the office of county commissioner and that each was "designed for the purpose of injuring him as chairman of the board and was published in an effort to charge him with crookedness and to injure him in his occupation and to defeat him at the primary election." He alleged and prayed for the recovery of general damages.

Defendants filed a motion to strike from the amended complaint and, at the same time, a general demurrer. The motion to strike sought to strike from the complaint, paragraph by paragraph, practically all of the body of the pleading, including all of the articles of publication set forth therein and all allegations in regard to them, which would completely emasculate the complaint and leave it a mere skeleton. The motion was based on the contention that each of the paragraphs moved to be stricken was irrelevant and immaterial and did not tend to state a cause of action or aid in the statement of a cause of action attempted to be pleaded. The motion, we consider, was too sweeping and, in effect, undertook to perform the office of a demurrer. Some of the paragraphs moved to be stricken should have been stricken; others, not. However, as no point is made of that, we shall not go into detail.

The motion and the demurrer were submitted together. The court first sustained the motion and then sustained the demurrer. Plaintiff failed to amend or plead further. His default was entered and the court rendered judgment against him, dismissing the action and awarding costs. Plaintiff appealed and assigns as error the rulings of the court in sustaining the motion to strike and sustaining the demurrer and its action in rendering judgment.

Some of the paragraphs of the complaint which set forth the alleged libelous articles and the allegations in regard thereto were properly stricken but not all. We shall test each of such paragraphs with relation to the motion to strike [1] or the demurrer, as we may deem appropriate. The al-

leged libelous articles being all set forth in one intended cause of action, of course if any one of them, with the allegations in regard thereto, is sufficient to state a cause of action it should have been allowed to stand and the demurrer should not have been sustained.

"Libel is a false and unprivileged publication, by writing, printing * * * or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule or obloquy or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation." (Sec. 5690, Rev. Codes, 1921.)

"Libel is libel *per se* or *per quod.* * * * *'Per se'* means [2] by itself, simply as such, in its own relations, and, in connection with slander or libel, the term is applied to words which are actionable because they, of themselves, without anything more, are opprobrious. * * * In order to render a publication actionable *per se,* the language used therein must be susceptible of but one meaning and that an opprobrious one." (*Rowan* v. *Gazette Printing Co.,* 74 Mont. 326, 239 Pac. 1035.) It is so held also in *Manley* v. *Harer,* 73 Mont. 253, 235 Pac. 757; *Brown* v. *Independent Pub. Co.,* 48 Mont. 374, 138 Pac. 258; and other decisions of this court.

"The opprobrious words are to be construed according to their usual, popular and natural meaning and common acceptation; that is, in the sense in which persons out of court and of ordinary intelligence would understand them." (*Daniel* v. *Moncure,* 58 Mont. 193, 190 Pac. 983.)

In an action for slander, the alleged defamatory matter is [3] to be construed as an entirety and with reference to the remaining portions of the conversation. (*Daniel* v. *Moncure, supra.*) The same rule applies to written or printed language, in actions for libel. (*Cooper* v. *Romney,* 49 Mont. 119, Ann. Cas. 1916A, 596, 141 Pac. 289; *Brown* v. *Independent Pub. Co., supra.*)

"An innuendo in pleading is an explanation of the defendant's meaning by reference to some antecedent matter. It is mostly used in actions for libel and slander. * * * It is a statement by the plaintiff of the construction which he puts upon the words, himself, and which he will induce the jury to adopt at the trial. Where a defamatory meaning is apparent on the face of the libel, itself, no innuendo is necessary." (Newell on Slander and Libel, 3d ed., 754.)

"If the language is not slanderous, *per se,* the innuendo cannot make it such." (*Daniel* v. *Moncure, supra.*) The same rule applies to actions for libel. (*Cooper* v. *Romney, supra; Manley* v. *Harer, supra; Brown* v. *Independent Pub. Co., supra; Paxton* v. *Woodward,* 31 Mont. 195, 107 Am. St. Rep. 416, 3 Ann. Cas. 546, 78 Pac. 215.)

If special damages are not pleaded in an action for libel, the complaint does not state a cause of action, unless the alleged libel be libel *per se.* (*Manley* v. *Harer, supra; Brown* v. *Independent Pub. Co., supra.*)

Judged by the foregoing rules and definitions, we proceed to test each of the alleged libelous articles set forth in the amended complaint.

The article set forth in paragraph VII of that pleading we do not consider has any element of libel. It is merely an expression of opinion of plaintiff's intellectual caliber. It casts no aspersion upon him. Even impliedly, it does not say he is not a solid, substantial or successful farmer and if it had said so it would not have been libelous. We fail to see in it anything calculated to injure plaintiff, as an individual, official or farmer.

The article set forth in paragraph VIII is a criticism of certain alleged official acts of plaintiff's; an expression of opinion as to the soundness of his judgment, as an official; but it contains no libel. It refers to his "entering a bill," in the sum of $25.60, against the county, for certain services,

but it does not say the bill was allowed; does not say he got the money or any part of it. It does not charge that plaintiff illegally obtained any county money or tried to do so. It charges nothing opprobrious.

The article set forth in paragraph X contains nothing that should be considered libelous. It does not mention plaintiff and it mentions only impliedly the board of county commissioners. It merely questions the business judgment of the board, in the expenditure of county funds.

The article set forth in paragraph IX perhaps justifies [7] more serious consideration than did any of those we have discussed. It names plaintiff and refers to "the interesting way he has of prying up the lid of the county 'strong box.'" Further, it likens him, perhaps, to Kaiser Bill (meaning, we suppose, the former German emperor). Plainly, the latter allusion is only sarcasm and is not libelous. The statement with reference to "prying up the lid of the county 'strong box'" we cannot say has only one meaning and that an opprobrious one. It is vague, ambiguous, uncertain as to its meaning. It might mean any one of different things. Literally, the county has no "strong box," so far as we know. We assume by the expression was meant the county treasury, the place where county funds are kept. The language used may mean that plaintiff, in connection with the other members of the board, was reckless, extravagant or injudicious in the expenditure of county funds. It may mean he had voted for allowance of claims against the county, through favoritism or without adequate value having been received by the county. It might have been intended to mean he raided the treasury, for his own benefit. We do not know what was intended. The article, if libelous at all, can be libelous only *per quod* and in that event it would require an innuendo to explain it. Counsel for plaintiff must have realized that, for they pleaded an innuendo; but when special damages are not pleaded an innuendo is useless, for unless the language

be libel *per se* the allegations do not state a cause of action; if libel *per se,* no innuendo is needed. The language is certainly not libel *per se.*

Lastly, the article set forth in paragraph XI is as follows: [8, 9]   "At the primary election there will be but one test of policy which will come thru the candidacies of Burr and McEneaney. Both candidates are on the democratic ticket. Mr. Burr is running for re-nomination on his record in office. Mr. McEneaney is running for nomination protesting Mr. Burr's record. In other words, if the administration policy of Petroleum County in the past is satisfactory to you, you will cast your vote for Burr, if unsatisfactory you will vote for McEneaney. If the democrats of Petroleum County believe in the passing of a secret $185,000 bond issue at the highest legal rate of interest; if they believe it necessary for the county to own a tractor costing close to $4,000.00; if they believe that Petroleum County should pay for money in closed banks before the value of it can be determined; if they think that the payment of $67,000.00 on this account to date is good business; if they think that the County should not pay $250 towards a county fair; if they think that all county business should be carried on behind closed doors—that the records should be moved to safety deposit boxes, out of sight of the public eye; if they believe that the county should not advertise for bids on road work; if they believe that Commissioner Burr is worth $110.33 a month for viewing roads and bridges; then, in that event, the democrats of Petroleum County are in accord with the present county administration and at the primary election will cast their votes for Burr. Should the democrats of Petroleum County desire to go on record at the Primary election as opposed to the present county administration, they will cast their votes for McEneaney. The primary contest between Burr and McEneaney will place the democrats on record for the general election in

the fall.    There is no conflict of policy among the republicans at the primary.''

Impliedly, that article charges plaintiff, in his official capacity, with a number of things.  A defamatory charge does not have to be made in direct, positive language but impliedly it may be made so plainly that it can have only one meaning and may constitute libel *per se.*  (*Paxton* v. *Woodward, supra;* Newell on Slander and Libel, 3d ed., 344; 36 C. J. 1153, 1173, 1178.)    Among other things, the article charges that plaintiff, as a member of the board of county commissioners, with the other members, constituting the board, conducted all county business behind closed doors; that he and they moved county records to safety deposit boxes, out of sight of the public eye. It further charges the members with ''passing'' a secret bond issue of $185,000, at the highest legal rate of interest.  The latter charge we consider nothing but a reiteration, in detail, of the charge of conducting all county business behind closed doors.

Counsel for plaintiff, in their brief, argue that the article charges plaintiff with commission of a misdemeanor; counsel for defendants, in his brief, argues to the contrary.   It is not necessary for us to decide if it does.   To constitute libel, a publication does not have to charge commission of a crime. In our opinion, regardless of whether or not the article charges commission of a misdemeanor, the charges therein constitute libel *per se.*

Section 4458, Revised Codes 1921, relates to boards of county commissioners and is as follows: ''All meetings of the board must be public and the books, records and accounts must be kept at the office of the clerk, open at all times for public inspection, free of charge.''   It is plainly charged in the article that the board habitually violated and acted in defiance of both of the commands of that section.

We believe the charge that the county commissioners ''passed'' or ordered a bond issue of $185,000 in ''secret''

plainly means that it was not done in public session, open
to the public; that the charge that they carried on all county
business behind "closed doors" plainly means that the doors
were closed to the public and that their meetings were not
public; that the charge that the records were "moved to
safety deposit boxes, out of sight of the public eye," plainly
means that it was done by the commissioners and that the
records were kept, some time of greater or lesser length, from
the public and were not open, at all times, for public in-
spection.

Section 10950, Revised Codes 1921, says: "Every wilful
omission to perform any duty enjoined by law upon any
public officer, or person holding any public trust or employ-
ment, or any neglect of duty, where no special provision has
been made for the punishment of such delinquency, is punish-
able as a misdemeanor." Section 10725, Revised Codes 1921,
provides what punishment shall be administered for every
offense declared to be a misdemeanor for which no different
punishment is prescribed by the Penal Code.

Nevertheless, even if the provisions of section 4458, *supra,*
be directory only, plaintiff is charged plainly with violation of
a law, which violation constitutes malfeasance in office, dere-
liction of duty, official misconduct and gross unfitness for the
position held; and, if the charge be false, as alleged, it is
libel *per se.* (37 C. J. 30; Newell on Slander and Libel, 3d
ed., 93; Odgers on Libel and Slander, 5th ed., 198, 223;
*Cooper* v. *Romney, supra; Wofford* v. *Meeks,* 129 Ala. 349,
87 Am. St. Rep. 66, 55 L. R. A. 214, 30 South. 625.) It is
held that it is libelous *per se* to charge one with breach of
official duty, the nonperformance of which will not, in law,
make him liable to expulsion from office, if the charge is
such as will bring the officer into disgrace or expose him
to public hatred, contempt or ridicule or deprive him of the
benefits of public confidence. (36 C. J. 1182.) Regardless
of whether or not the acts of malfeasance charged to plain-

[80 Mont. 70.]

tiff would make him liable to expulsion from office or would carry with them any other penalty, who is there who would want continued in office a county commissioner who habitually, deliberately and flagrantly violates plain mandates of the statutes concerning business of the public? Who would have any respect for such an official? None, we dare say. Such charges certainly are sufficient to deprive an official of the benefits of public confidence. Plaintiff alleged the charges were false and we must so deem them in considering the sufficiency of the amended complaint, under attack by demurrer.

We hold the language adverted to is opprobrious and susceptible of but one meaning and that the charges naturally expose plaintiff to obloquy, defined as ''blame, reprehension, being under censure, a cause or object of reproach, a disgrace'' (Webster's International Dictionary); and that, if false, as alleged, the charges constitute libel *per se*. Other charges in the article in question we do not deem it necessary to discuss. Enough has been said to show that those charges discussed, if false, as alleged, regardless of others, make the article a libel *per se*. The article under discussion should not have been ordered stricken from the amended complaint.

There being, then, set forth in the amended complaint one article which is libelous *per se*, the demurrer should have been overruled and the trial court erred in sustaining the demurrer and rendering its judgment. The judgment is reversed and the cause is remanded, with directions to the district court to overrule the demurrer.

*Reversed and remanded.*

Mr. Chief Justice Callaway and Associate Justices Stark, Matthews and Galen concur.