LEO V. STEFFES, Plaintiff and Appellant, v. GUS CRAW-
FORD, Defendant and Respondent.

No. 10520

Submitted May 13, 1963. Decided July 16, 1963.

Rehearing denied December 6, 1963.

386 P.2d 842

44

Gene Huntley (argued orally), Baker, for appellant.

Martin & Young, Arthur B. Martin (argued orally), Baker, F. F. Haynes, Forsyth, for respondent.

HONORABLE W. W. LESSLEY, District Judge, sitting in place of MR. CHIEF JUSTICE JAMES T. HARRISON delivered the opinion of the Court.

Action for libel, here on an appeal from a judgment granted on the pleadings.

The complaint alleges that a few days before November 4, 1958, the date of the general election in Fallon County, an election in which plaintiff was a candidate for sheriff, the defendant mailed a letter to the post office box holders in that County. The defendant composed the letter on which this libel is bottomed; he had it printed and he mailed it. This is the letter:

"To the Voters of Fallon County
"By Gus Crawford

"DEAR READERS:

"I belong to the Republican party. A party that has no place for communists. I would hate to think I would vote for a Republican that I figure is not fit for office. I try and vote for people that I know.

"I see where our Sheriff is up before the voters. I am go-

ing to vote for Wallace Hufford for Sheriff. I have known Mr. Hufford for a long time, he is honest and is a man that I know would not be beating people on shady deals.

"I have talked to our Highway Patrol Department and they state they will never put a Patrolman at Baker as long as Baker has Huntley for County Attorney and Steffes for Sheriff. We never have had a county attorney and sheriff that has pulled things that this pair has pulled.

"I have nothing but praise for Terry Cameron as the Undersheriff. When Hufford gets in for sheriff he should try and keep Cameron. I would like to debate with Gene Huntley and Sheriff Steffes about things they have pulled and tried to pull on people while in office.

"The people should never vote for Arnold Olsen for Chief Justice of our Supreme Court with the record he had as Attorney General. Should show one that it would be an awful risk to give him the highest office in our dear State of Montana.

"Now voters, we have two parties, the Republican and the Democrat. Some are out for the money that it pays and no regards to law and order. Why hasn't the law stepped on reckless drivers? A life that has been lost and may have been saved if the law had cracked down on some. Could it be too close to election?

"Now, I am voting for some Democrats for County offices but for State I am voting for all Republicans. For Associate Justice of Supreme Court, vote for Wesley Castles and James T. Harrison. Vote for Ashton Jones for Congress.

"I am also voting for Don Morrow for State Senator. I will also give my vote to Jake H. Ehret for Commissioner, my reason is we should vote for land owners.

"Bonnie Larson will get my vote, she deserves the support of you all. I am giving my vote to John Rusley for County Commissioner, he is a man one can depend on to give sober service at all times.

"Paid for by Gus Crawford.

"GUS CRAWFORD
"Box 686
"Baker, Montana."

The plaintiff commenced this action on July 16, 1959; defendant answered, admitting all material allegations, except he denied the letter was libelous and denied that plaintiff suffered any damages. On October 2, 1959, plaintiff required defendant to give his deposition; plaintiff felt it was an abortive deposition and instituted contempt proceedings. The lower court quashed and dismissed the contempt action; the court in its order, ruled in effect, that the questions complained of, were later answered by the defendant.

Almost three years later, and less than ten days before trial date, plaintiff again took defendant's deposition. Plaintiff's questions, similar to those propounded in the first deposition, were not answered to his satisfaction. He sought an order compelling answer by defendant. The court refused; and in its minute entry order spoke of the same questions asked as were asked at the first deposition; the court applied the former rules of procedure.

The plaintiff immediately following the court's order on the second deposition, refused to proceed further with the trial of the cause. The defendant's counsel then moved for judgment on the pleadings. Judgment granted by the lower court.

Two principal issues are presented. The first is whether the published letter is libelous per se. The second issue is whether the lower court committed error in its deposition rulings.

We consider our first issue, by asking the question, What was the theory of plaintiff's complaint? The answer is obvious. Plaintiff's attorney answered a direct question of this court, by admitting it was libel per se. There are no special damages alleged in the complaint. The general rule adopted by this court in all its adjudicated cases on libel is that un-

less the publication is libelous per se special damages must be alleged. Brown v. Independent Publishing Co., 48 Mont. 374, 138 P. 258; Manley v. Harer, 73 Mont. 253, 235 P. 757; and the final statement in Griffin v. Opinion Publishing Co., 114 Mont. 502, 138 P.2d 580; "Clearly the complaint fails to state a cause of action based upon words actionable *per quod* for *there is no allegation whatever of any special damage.*" (Emphasis supplied.) Thus, by admissions of plaintiff's counsel, on the face of the pleadings, and in light of the settled law we can say this action was brought on the theory of libel per se and no other.

Now, we consider the question facing the lower court at the time of defendant's motion for judgment on the pleadings. Was the letter libelous per se?

We look at this letter, aided by definite rules of interpretation as stated by this court in scores of cases. "* * * the entire printed statement must be viewed by the court as a stranger might look at it, without the aid of special knowledge possessed by the parties concerned." Brown v. Independent Publishing Co., supra. If we do that, we have a letter from a person interested in the forthcoming election in Fallon County; he covered the waterfront or political front in his letter. He did not approve a certain candidate; he said so; and his disapproval is obvious. He indicated how he was going to vote and it was certain he was not voting for the plaintiff. "* * * the words used * * * may not be segregated from other parts and construed alone. Paxton v. Woodward, 31 Mont. 195, 78 P. 215, 107 Am.St.Rep. 416." Woolston v. Montana Free Press, 90 Mont. 299, 2 P.2d 1020.

Plaintiff was not the only candidate displeasing to the defendant. Not once did the defendant say the plaintiff was dishonest; not once did he say that the plaintiff would or did beat people on shady deals. All of the statements must be read together. It might be admitted that implications and innuendoes might bring the statements of the letter "on shady

deals" within our statutory definition of libel. But here we deal with libel per se—"such words, as they are used must be susceptible of but one meaning"—Brown v. Independent Publishing Co., supra. Or, as Justice Adair stated in Griffin v. Opinion Publishing Co., "However, for words to be actionable per se their injurious character must be a fact of such common notoriety as to be established by the general consent of men * * *." (114 Mont. 502, 138 P.2d 580) "* * * the alleged libelous article must be susceptible of but one meaning to constitute libel per se * * *." Woolston v. Montana Free Press, 90 Mont. 299, 2 P.2d 1020. "* * * the plaintiff * * * was required to plead and prove that the published language and words complained of, *in themselves*, alone and unaided by any innuendo whatever, were actionable * * *." Griffin v. Opinion Publishing Co., supra, "In order to render a publication actionable per se, the language used therein must be susceptible of but one meaning and that an opprobrious one." Burr v. Winnett Times Publishing Co., 80 Mont. 70, 258 P. 242. Such unequivocal statement is not to be found on the face of this letter. The strongest proof of this lack is found in the plaintiff's forays into the field of deposition.

The letter was not libelous per se and the learned court below was correct in granting the judgment on the pleadings.

So, our second issue, did the lower court err in its deposition rulings must be considered in the light of the limitation of plaintiff's theory of libel per se.

We now answer the question raised by the second issue, did the lower court err in its rulings on the two depositions? Our answer is not difficult, for we follow two guide lines to our conclusion. The first, is that the plaintiff was consistently before the lower court on only one theory and that was libel per se. The second is that we construe the rulings on the deposition in light of the lower court's approach, under the former rules as to depositions, not under M.R.Civ.P.

When the court refused to compel answers, as requested

by the plaintiff, plaintiff refused to proceed with the trial of the case. The defendant then moved for a judgment on the pleadings; that motion was granted. The judgment so granted was on the merits. Section 93-4706, R.C.M.1947; Rule 12(c) M.R.Civ.P. Examination of this record could well lead us to say the deposition orders are intermediate, do not involve the merits or affect the judgment and we are therefore asked to pass on a question that is moot, or if it is not moot and is error, it is harmless. Rule 61, M.R.Civ.P.; section 93-8022, R.C.M. 1947. As stated by Professor Moore: "The instant Rule reflects the entire spirit of the Rules of Civil Procedure * * * which provides that the Rules 'shall be construed to secure the just, speedy, and inexpensive determination of every action' ". 7 Moore F.P.2d Ed., p. 1005.

We need not reiterate what has been said as to plaintiff's theory of libel per se.

 The plaintiff did not need to prove falsity and malice. Manley v. Harer, 73 Mont. 253, 235 P. 757. What purpose could be served to establish falsity or malice of words not defamatory on their face? What substantial purpose would be served by securing defendant's answer as to what he meant by the phrase, "beating people on shady deals"? How could the question be pertinent? All of this is not to disagree with the lower court's interpretation that the questions were answered later on. It is to insist, that even if not answered, the plaintiff's theory labeled the questions asked not pertinent, nor of substantive purpose.

The court made its rulings on the deposition under the former or old Rules. Under the facts, under the time scheduling of the two depositions, and under Rules 81(c) and 86, M.R. Civ.P. he had the power and right to do this. In so holding he held the questions asked, answered in the first deposition; and subsequently not pertinent in light of plaintiff's theory of libel per se. State ex rel. Bacorn v. District Court, 73 Mont. 297, 236 P. 553.

50

While we do not so hold, nor is it necessary for the decision, the court's ruling on the second deposition even under the new Rules was not error. Rule 30(b), M.R.Civ.P. arms the court with power to limit the examination and protect the witness from annoyance, embarrassment or oppression. That is the net effect of Judge Flachsenhar's minute order of May 14, 1962.

We find no error; judgment affirmed.

MR. JUSTICES JOHN CONWAY HARRISON, ADAIR and DOYLE, and THE HONORABLE C. B. ELWELL, District Judge, sitting in place of MR. JUSTICE CASTLES, concur.