No. 01-761

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 128

WILLIAM ALLEN ANDERSON,

Plaintiff and Appellant,

v.

THE CITY OF TROY, MONTANA,
and MITCH WALTERS,

Defendants and Respondents.

APPEAL FROM:     District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, Cause No. DV-00-106,
Honorable Michael C. Prezeau, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

William A. Douglas, Douglas Law Firm, Libby, Montana

For Respondents:

Mikel L. Moore, Christensen, Moore, Cockrell,
Cummings & Axelberg, P.C., Kalispell, Montana

Submitted on Briefs:  March 14, 2002

Decided:   April 29, 2003

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 William Allen Anderson sought legal redress from the City of Troy and its Chief of Police for slander. On summary judgment, the Nineteenth Judicial District Court, Lincoln County, held that the term "gang banger" does not impart a clear defamatory meaning. We affirm.

¶2 The dispositive issue on appeal is whether the District Court erred in granting summary judgment as a matter of law to the City of Troy and its Chief of Police.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 Anderson filed a Complaint on August 23, 2000, alleging that Troy police chief Mitch Walters made false and defamatory statements on four occasions between May 1999 and October 1999 that referred to Anderson as a "gang banger." The Complaint stated that the term "gang banger," as intended by Walters and understood by the persons to whom the statements were made, "denotes a person who is a member of a gang whose members: commit crime; are real gangsters; are the wrong people that do crime; are worthless; and, are bottom of the barrel." Anderson sought $20,000 in general damages for slander.

¶4 Walters answered that the statements attributed to him did not constitute slander. In addition, he asserted that each utterance cited in the Complaint enjoyed protection as a statement of opinion and as privileged communication spoken in the proper discharge of Walters's official duties as a police officer. At the close of discovery, the City and Walters moved for summary judgment.

2

¶5     Walters admitted that during a two-hour conversation with Barbara Anderson, Anderson's mother and the Mayor of Troy at the time, he stated that Anderson "was acting like a god-damn gang banger." Barbara recalled that Walters also asked, "Why does your son dress like that at 28 years old?" For the purposes of summary adjudication, the City of Troy and Walters invited the District Court to accept as true other instances when Walters allegedly referred to Anderson as a "gang banger from California," as recounted by Anderson's father, Allen Anderson, and two of Anderson's friends in depositions.

¶6     Allen Anderson testified that in June 1999 a clerk at the IGA supermarket in Troy called the police when she felt threatened after a verbal altercation with William Anderson at the store. After William had departed, Allen went to the store and spoke with Walters, who was at the store in response to the clerk's complaint. Walters asked Allen, "Is your son a gang banger from Los Angeles?" Allen said "No," and explained that William "was car-jacked by gang bangers in LA one month before I sent him out of state." According to Allen, William was 16 or 17 years old at the time.

¶7     David Cooper testified that when he was discussing his City towing contract at the police station in May 1999, Walters asked him, "What the hell are you doing with the likes of a gang banger like Bill?" A few months later, David confronted Walters at the Troy City Hall about the behavior of another police officer and recalled that Walters again asked David what he was doing hanging around with Anderson, without using the term "gang banger." David stated that he had no knowledge of any other statements concerning Anderson made by Walters.

¶8     Brenna Meyer rented from Anderson's parents and testified that she and Anderson were best friends. She stated that Walters "always made it known that he does not like Bill. . . . Well, in an instance, he said that [Bill Anderson] was just a gang banger from California who didn't belong in a town like Troy." Brenna remarked, "I mean, Mitch [Walters] was my friend at the time, you know, and Bill [Anderson] was my friend. It's kind of hard when you have two of your friends that don't like each other."

¶9      All deposed witnesses testified that Walters's direct references to Anderson as a "gang banger" had no impact on their personal relationship with or perception of Anderson. Each stated that he or she knew that Anderson was not a member of an organized gang. No evidence was presented that indicated the allegedly slanderous statements were made to others who might have believed that Anderson was a gang member.

¶10    The District Court granted summary judgment in Walters's favor on August 28, 2001.

## STANDARD OF REVIEW

¶11    Our standard of review on appeal from summary judgment is *de novo* and we apply the same criteria as the district court based on Rule 56, M.R.Civ.P. *Bruner v. Yellowstone County* (1995), 272 Mont. 261, 264, 900 P.2d 901, 903). We review the legal determinations made by a district court to determine if the legal conclusions are correct. *Bruner*, 272 Mont. at 265, 900 P.2d at 903.

## DISCUSSION

¶12    Anderson appeals the District Court's conclusion that the term "gang banger" as applied to him is not slander *per se.* Anderson admits that no evidence indicates that the

4

statements allegedly made by the Chief of Police affected his car detailing business or his family's clothing store in Troy, but he argues that the law presumes injury as a consequence of slander *per se* and he need not prove specific damages.

¶13    As a threshold matter, the police chief's statements must satisfy the statutory definition of slander to be actionable.  Section 27-1-803, MCA, sets forth the following definition:

> Slander is a false and unprivileged publication other than libel which:
>      (1) charges any person with crime or with having been indicted, convicted, or punished for crime;
>      (2) imputes in him the present existence of an infectious, contagious, or loathsome disease;
>      (3) tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit;
>      (4) imputes to him impotence or want of chastity; or
>      (5) by natural consequence causes actual damage.

¶14    To determine whether false defamatory words about a person are slanderous, this Court stated in *Keller v. Safeway Stores, Inc*. (1940), 111 Mont. 28, 108 P.2d 605, that the challenged statement is to be construed by attributing the usual, popular and commonly accepted meanings to the words and by discerning how an uninvolved person of ordinary intelligence and without special knowledge would understand the statement.  *Keller,* 111 Mont. at 31, 108 P.2d at 608 (citing *Daniel v. Moncure* (1920), 58 Mont. 193, 197, 190 P. 983, 985; *Burr v. Winnett Times Pub. Co*. (1927), 80 Mont. 70, 75, 258 P. 242, 244; *Porak v. Sweitzer's, Inc*. (1930), 87 Mont. 331, 340-41, 287 P. 633, 635; *Campbell v. Post Publishing Co.* (1933), 94 Mont. 12, 17-18, 20 P.2d 1063, 1064).  The language used must

5

be susceptible to one meaning and that meaning must be opprobrious. *Keller,* 111 Mont. at 31, 108 P.2d at 608 (citing *Campbell,* 94 Mont. at 18, 20 P.2d at 1064; *Burr*, 80 Mont. at 75, 258 P. at 244 ; *Manley v. Harer* (1925), 73 Mont. 253, 258, 235 P. 757, 759; *Brown v. Independent Pub. Co*. (1914), 48 Mont. 374, 380, 138 P. 258, 260); *Wollston v. Montana Free Press* (1931), 90 Mont. 299, 301, 2 P.2d 1020, 1021. This Court further explained *:*

> Words are defamatory *per se* which upon their face and without the aid of extrinsic proof are injurious to the person concerning whom they are spoken. If the injurious character of the words does not appear from their face when taken in their plain and natural meaning and according to the sense in which they appear to have been used, they are not defamatory *per se* but are said to require innuendo.

*Manley*, 75 Mont. at 258, 235 P. at 758. If the language is not slanderous *per se*, as defined by statute, it cannot be made so by innuendo because the term "*per se*" means that the words are actionable because they, by themselves, without anything more, are opprobrious. *Burr*, 80 Mont. at 75, 258 P. at 244.

¶15     For defamatory words to be actionable for a tendency to injure a person in his occupation, the words must expose the person to hatred, contempt, ridicule or obloquy and be of a nature that the court may presume as a matter of law that the words will tend to disgrace and degrade or cause the person to be shunned and avoided. *Wainman v. Bowler* (1978), 176 Mont. 91, 96, 576 P.2d 268, 271. It is not sufficient, standing alone, that the language is unpleasant, annoying or irksome and subjects the person to jests or banter. *Wainman,* 176 Mont. at 96, 576 P.2d at 271 (citing *Gang v. Hughes* (S.D.Cal. 1953), 111 F.Supp. 27, 29).

6

¶16    Each witness deposed in this action expressed a somewhat different understanding of the term "gang banger."  David Cooper explained, "To me what a gang banger is is someone that dresses quite different.  A little hoodlum would be my best description.  Not someone I would care to associated with . . . .  Someone that's going to cause a lot of trouble around town, get into mischief, thieving."  Brenna Meyer testified, "I don't really know how gang members dress, so I wouldn't know if that's how [Bill Anderson] dresses, but my boyfriend dresses with the same kind of clothes, so I don't see the problem with it."  She continued,  "To me [gang banger] would just mean someone who is a thug, who hangs with other people that are in a gang."  Deputy County Sheriff James Sweet testified that he never heard Walters call anyone a "gang banger," but recalled that Allen Anderson used the term in reference to his son.  Sweet stated, "To my understanding, the term 'gang banger' refers to an active member of  a known, recognized gang . . . meaning you're actively involved in a recognized gang . . . recognized and identified by law enforcement as a gang."  Mitch Walters testified, "I think of a gang banger as someone who has an affiliation with a gang. Nothing more."

¶17    Based on the testimony of witnesses responding to questions about the meanings they attached to the word "gang banger," the District Court summarized:

> The term "gang banger" has apparently acquired a different connotation over the years than it used to have, and while the connotation is certainly not a pleasant one, the exact meaning and implications of the term are subject to speculation.  Does it refer to the way one dresses?  To whom a person associates with?  To the music one listens to?  To one's beliefs or philosophy?  To one's lack of respect for the law or social norms? To one's propensity to violate the law?  To a propensity for violence?  Do gang bangers all do the same things? Do they all act the same way?  Are there good gang bangers and

7

bad gang bangers?  If it could be proven that a person is a gang banger, would the person be subject to arrest?

While one may have a visceral reaction that calling someone a "gang banger" does not attribute positive qualities to the person, the term hardly tells us any more than would calling someone a "crook," a "creep," a "gangster," a "hoodlum," or any one of a thousand other vague terms which leave the listener guessing as to the actions or characteristics of the person being described.  None of these terms have a single unmistakable meaning; they all rely upon innuendo. Terms which basically convey only a vague message that someone is a "bad person" are not slanderous.

The District Court concluded that, if the Chief of Police said what he was alleged to have said, his comments did not amount to slander as a matter of law.

¶18     We agree with the District Court's cogent summary of the ambiguities surrounding the term "gang banger."  The Troy Chief of Police did not accuse Anderson of any specific criminal activity or impute any particular opprobrious characteristic.  Today, the term "gang banger" appears to denote either a *bona fide* member of a street gang or a wannabe, which adds up to nothing more than innuendo.   Therefore, we conclude that the idiom has taken on a modern signification that fails to qualify as slander.

¶19     We hold that the District Court was correct to grant summary judgment in favor of the City of Troy and Chief Walters as a matter of law.  Because we affirm the court's ruling on the basis that Anderson has failed to make a *prima facie* case for slander, we need not reach the defenses that the challenged comments are protected under the First Amendment of the United States Constitution as statements of opinion and are privileged statements made in the proper discharge of Walters's official duty as the Troy Chief of Police, pursuant to § 27-1-804(1), MCA.

8

¶20     Affirmed.


                                        /S/ JIM RICE


We concur:


/S/ JIM REGNIER
/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON