No. 13741

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

———————————

A. P. MADISON,

Plaintiff and Appellant,

-vs-

CAREY MATOVICH YUNKER, Individually
and as Editor of the Montana Kaimin,
the University of Montana Student
Newspaper; The Montana Kaimin; et al.,

Defendants and Respondents.

———————————

Appeal from:  District Court of the Fourth Judicial District,
Honorable Edward T. Dussault, Judge presiding.

Counsel of Record:

For Appellant:

Boone, Karlberg and Haddon, Missoula, Montana
Sam E. Haddon argued, Missoula, Montana

For Respondents:

Calton & Stephens, Billings, Montans
Herron and Meloy, Helena, Montana
Peter M. Meloy argued, Helena, Montana
Bruce B. Barrett argued, Missoula, Montana
Richard Volinkaty argued, Missoula, Montana
Garlington, Lohn and Robinson, Missoula, Montana
Gary Graham argued, Missoula, Montana

For Amicus Curiae:

Brinton Markle, Helena, Montana

———————————

Submitted:  May 5, 1978

Decided:  AUG     1978

Filed:  AUG     1978

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Plaintiff appeals from the order of the District Court, Missoula County, granting defendants' motion to dismiss plaintiff's cause of action for libel and from the entry of judgment for defendants.

The present cause of action arose out of a purported libelous publication written by defendant Carey Matovich Yunker (Yunker) and published in the October 8, 1974 edition of the Montana Kaimin, the University of Montana student newspaper. In pertinent part the editorial states:

> "* * * One of the memos is from Al Madison.
> His position, director of the University
> print shop, alone makes anything he would
> say on the matter suspect. As well, he is
> a congenital liar, an incompetent whose own
> operation has lost $103,914.89 in the last
> four years. * * *"

On December 9, 1974, Madison filed a complaint against defendants in the District Court alleging defendant Yunker, acting in her capacity as editor of the Montana Kaimin, deliberately and maliciously libeled plaintiff by publishing false defamatory statements. Plaintiff pleaded noncompliance with section 64-207.1, R.C.M. 1947, (Montana's retraction statute) on the grounds that section is unconstitutional and the purported libel was not within the scope of section 64-207.1.

Madison prayed for judgment in his favor and an award of special, general, and punitive or exemplary damages in the aggregate amount of $102,000.

On December 30 and 31, 1974, defendants filed motions to dismiss Madison's complaint, pursuant to Rule 12(b), M.R.Civ.P., on the grounds the complaint failed to state a claim upon which relief could be granted and the District

-2-

Court lacked jurisdiction over parties in a libel action until Madison complied with section 64-207.1. The University of Montana's motion to dismiss was based upon the additional ground that no claim had been filed against the University of Montana pursuant to section 82-4312, R.C.M. 1947.

On January 31, 1975, Madison filed a motion to defer consideration of matters raised in the consolidated motion of the University of Montana pending final determination of the constitutionality of section 64-207.1. Madison and the University of Montana stipulated that the resolution of the constitutionality of section 64-207.1 was a condition precedent to the maintenance of any action for libel.

On May 29, 1975, the District Court heard oral argument on defendants' separate motions to dismiss. Briefs in support of and in opposition to the motions to dismiss were filed by the parties. On December 22, 1976, the District Court issued an order granting defendants' motions to dismiss on the grounds section 64-207.1 is constitutional under the 1972 Montana Constitution and Madison failed to demand a retraction pursuant to section 64-207.1, defendants being entitled to "* * * an opportunity to publish a retraction to mitigate actual or compensatory damages, if any." Judgment was accordingly entered for defendants.

The issues presented for review, as stated by appellant Madison, are:

1. Does section 64-207.1, R.C.M. 1947, requiring a demand for retraction as a prerequisite to an action for libel, impose unconstitutional restraints upon personal liberties and rights guaranteed by Article II, 1972 Montana Constitution and the due process provision of the Fourteenth Amendment to the United States Constitution?

2. Does section 64-207.1, R.C.M. 1947, have any application in a libel action founded upon publication of an obvious intentional falsehood?

We are handed for determination a classic confrontation between basic and treasured constitutional rights, the freedom of speech and press guaranteed under the First Amendment of the United States Constitution, on the one hand, and the rights of an individual to be secure from defamation on the other. The pivotal determination we must make is the constitutional validity of section 64-207.1. For on that determination, all else in this case depends. It requires, as we said in Granger v. Time, Inc. (1977), ___ Mont. ____, 568 P.2d 535, 541, 34 St.Rep. 983, a "* * * careful balancing of the First Amendment freedoms of speech and press, and the personal dignity interests underlying the law of defamation".

At the outset, we set out in full the statute which is under attack:

"64-207.1. Notice in writing to publisher of libelous or defamatory matter--opportunity to correct--defense and mitigation of damages. Before any civil action shall be commenced on account of any libelous or defamatory publication in any newspaper, magazine, periodical, radio or television station, or cable television system, the libeled person shall first give those alleged to be responsible or liable for the publication a reasonable opportunity to correct the libelous or defamatory matter. Such opportunity shall be given by notice in writing specifying the article and the statements therein which are claimed to be false and defamatory and a statement of what are claimed to be the true facts. The notice may also state the sources, if any, from which the true facts may be ascertained with definiteness and certainty. The first issue of a newspaper, magazine or periodical published after the expiration of one week from the receipt of such notice shall be within a reasonable time for correction. In the case of radio and television stations and cable television systems a broadcast made at the same time of day as the broadcast com-

-4-

plained of and of at least equal duration, which is made within seven (7) days following receipt of such notice shall be within a reasonable time for correction. To the extent that the true facts are, with reasonable diligence, ascertainable with definiteness and certainty, only a retraction shall constitute a correction; otherwise the publication of the libeled person's statement of the true facts, of so much thereof as shall not be libelous or another, scurrilous, or otherwise improper for publication, published as his statement, shall constitute a correction within the meaning of this section. If <u>it</u> <u>shall</u> <u>appear</u> <u>upon</u> <u>trial</u> <u>that</u> <u>the</u> <u>publication</u> <u>was</u> <u>made</u> <u>under</u> <u>honest</u> <u>mistake</u> <u>or</u> <u>misapprehension,</u> <u>then</u> <u>a</u> <u>correction,</u> <u>timely</u> <u>published,</u> <u>without</u> <u>comment,</u> <u>in</u> <u>a</u> <u>position</u> <u>and</u> <u>type</u> <u>as</u> <u>prominent</u> <u>as</u> <u>the</u> <u>alleged</u> <u>libel,</u> or in a broadcast made at the same time of day as the broadcast complained of and of at least equal duration, <u>shall</u> <u>con-</u> <u>stitute</u> <u>a</u> <u>defense</u> <u>against</u> <u>the</u> <u>recovery</u> <u>of</u> <u>any</u> <u>damages</u> <u>except</u> <u>actual</u> <u>damages,</u> <u>as</u> <u>well</u> <u>as</u> <u>being</u> <u>competent</u> <u>and</u> <u>material</u> <u>in</u> <u>mitigation</u> <u>of</u> <u>actual</u> <u>damages</u> <u>to</u> <u>the</u> <u>extent</u> <u>the</u> <u>correction</u> <u>published</u> <u>does</u> <u>so</u> <u>mitigate</u> <u>them.</u>" (Emphasis added.)

The pertinent part of the Fourteen Amendment to the

United States Constitution reads:

"* * * No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

Article II, 1972 Montana Constitution, has several sec-

tions which are pertinent to or have some significance in

this case:

"Section 3. Inalienable rights. All persons are born free and have certain inalienable rights. They include the right to a clean and healthful environment and the rights of pursuing life's basic necessities, enjoying and defending their lives and liberties, acquiring, possessing and protecting property, and seeking their safety, health and happiness in all lawful ways. In enjoying these rights, all persons recognize corresponding responsibilities.

"Section 4. Individual dignity. The dignity of the human being is inviolable. <u>No</u> <u>person</u> <u>shall</u> <u>be</u> <u>denied</u> <u>the</u> <u>equal</u> <u>protection</u> <u>of</u> <u>the</u> <u>laws.</u> Neither the state nor any person, firm, corporation, or institution shall discriminate against any person in the exercise of his civil

-5-

or political rights on account of race, color, sex, culture, social origin or condition, or political or religious ideas.

"* * *

"Section 7. Freedom of speech, expression, and press. No law shall be passed impairing the freedom of speech or expression. Every person shall be free to speak or publish whatever he will on any subject, being responsible for all abuse of that liberty. In all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and the jury, under the direction of the court, shall determine the law and the facts.

"* * *

"Section 16. The administration of justice. Courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character. No person shall be deprived of this full legal redress for injury incurred in employment for which another person may be liable except as to fellow employees and his immediate employer who hired him if such immediate employer provides coverage under the Workmen's Compensation Laws of this state. Right and justice shall be administered without sale, denial, or delay.

"Section 17. Due process of law. No person shall be deprived of life, liberty, or property without due process of law." (Emphasis supplied.)

It will be noted that several of the foregoing provisions of the Montana Constitution repeat or restate like provisions in the United States Constitution. For example, Article II, Section 4, provides that no person shall be denied the equal protection of the laws. Article II, Section 17, provides that no person shall be deprived of life, liberty or property without due process of law. Freedom of speech, of expression and of press is guaranteed in Article II, Section 7. These state constitutional provisions, identical or nearly identical with like language in the United States Constitution and certainly identical in concept, each constitute separate and enforceable constitutional rights insofar as the jurisdiction of the State of Montana extends. Where state and

-6-

federal constitutional provisions are identical, each is enforceable in its own respective sphere where those principles attach. See, Department of Mental Hygiene v. Kirchner (1965), 62 Cal.2d 586, 43 Cal.Rptr. 329, 400 P.2d 321; Emery v. State of Montana (1978), ___ Mont. ____, 580 P.2d 445, 35 St.Rep. 709.

The competing freedoms which section 64-207.1 affect are found in the Montana constitutional provisions. First and foremost of the affected provisions is Article II, Section 7. Freedom of the press flowers in the language "every person shall be free to speak or publish whatever he will on any subject", but there is an accompanying thorn, "being responsible for all abuse of that liberty."

It is noteworthy that the constitution does not define the clause "abuse of that liberty". However, on the books at the time of the adoption of the constitution was section 64-203, R.C.M. 1947, a definition of libel. That statute follows:

> "Libel is a false and unprivileged publication by writing, printing * * * which exposes any persons to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation."

We may assume therefore that an "abuse of that liberty" would be any publication that would fit the statutory definition of libel. We are fortified in this conclusion by the fact that in Article II, Section 7, 1972 Montana Constitution, the section goes on to say, "in all suits and prosecutions for libel or slander, the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the facts."

We determine, therefore, that suits for libel are recognized and preserved in the 1972 Montana Constitution. It is proper to turn now to determine whether there is anything in the First Amendment to the United States Constitution, re-

garding freedom of the press, or the case law applying thereto, that allows the press a greater degree of freedom than the Montana Constitution, or prevents suits for libel such as contemplated by the Montana Constitution.

We find from Gertz v. Robert Welch, Inc. (1974), 418 U.S. 323 347, 94 S.Ct. 2997, 41 L Ed 2d 789, that states may provide for libel actions, at least where the publication is libelous on its face:

> "We hold that, so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual. This approach provides a more equitable boundary between the competing concerns involved here. It recognizes the strength of the legitimate state interest in compensating private individuals for wrongful injury to reputation, yet shields the press and broadcast media from the rigors of strict liability for defamation. At least this inclusion obtains where, as here, the substance of the defamatory statement 'makes substantial danger to reputation apparent'. This phrase places in perspective the conclusion we announce today. Our inquiry would involve considerations somewhat different from those discussed above if a State purported to condition civil liability on a factual mis-statement whose content did not warn a reasonably prudent editor or broadcaster of a defamatory potential * * *." 418 U.S. at 347, 348.

We next turn to consider how section 64-207.1 comports with Article II, Section 7, respecting the freedom of the press which we have already set out in full, and the provisions of Article II, Section 16, which provides that "courts of justice shall be open to every person, and speedy remedy afforded for every injury of person, property, or character * * *."

It is plaintiff's contention that the provisions of section 64-207.1 absolutely preclude a suit by a defamed individual and that the statutory requirement therein for written notice demanding a retraction is outside the

provisions of the 1972 Montana Constitution and an impermissible limitation or restriction on the constitutional right of action for libel. Defendants on the other hand contend that the statute does not bar suits for libel, but only sets forth a condition precedent to maintaining a suit; that the effect of section 64-207.1, once followed, is to mitigate damages; and further, that the provision for retraction is in itself a remedy afforded by the statute to a libeled person.

This Court has said that:

> "The underlying purpose of libel laws is to furnish a means of redress for defamation. Every person is entitled to enjoy his reputation unimpaired by false and defamatory remarks. An action for libel or slander is based upon a violation of this right which exposes a person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation. (Citations omitted.) " Lewis v. Reader's Digest (1973), 162 Mont. 401, 406, 512 P.2d 702.

The legislature has defined what constitutes libel. Section 64-203. It has also determined who can be held liable for libel. Section 64-201, et seq., R.C.M. 1947. These statutes implement the constitutional mandate of Article II, Section 7, 1972 Montana Constitution and also of Article II, Section 16, of that Constitution, which provides that a remedy shall be available for injury to character.

The District Court in this case dismissed Madison's complaint because Madison failed to give the required notice for retraction. It must be said that the District Court was simply following the statute, which allows no other interpretation. The statute begins with the words: "Before any civil action shall be commenced * * * the libeled person shall first give * * * notice to the libelor * * *." This

requirement is in direct derogation of the clear and unambiguous language of Article II, Section 16, 1972 Montana Constitution, which mandates that the courts of this state are open to every person, and a remedy afforded for every injury to character.

> "* * * With reference to the subjects upon which the Constitution speaks, its declarations are binding upon the legislature (citing case). Constitutional provisions are conclusive upon the legislature and prevent the enactment of any law which extinguishes or limits the powers conferred by the Constitution (citing cases)." Noll and Kenneady v. Bozeman (1975), 166 Mont. 504, 507, 534 P.2d 880.

We do not find that the "right" of a libeled individual to obtain a retraction under section 64-207.1 is in itself a remedy. Remedies for "injury of * * * character" are found in "courts of justice" which "shall be open to every person". In all suits for libel, "the truth thereof may be given in evidence, and the jury, under the direction of the court, shall determine the law and the facts". Article II, Sections 7 and 16, 1972 Montana Constitution. Thus, the state constitution fixes the right to a remedy and where it may be sought. The legislature is without power to provide otherwise.

We therefore hold section 64-207.1, R.C.M. 1947, unconstitutional in that it is in violation of the provisions which we have noted of Article II, Sections 7 and 16, 1972 Montana Constitution.

Having so held, there is no need for us to reach a decision as to the additional objections made by Madison to section 64-207.1 that it violates the due process clauses of the Montana Constitution and the Fourteenth Amendment, and the equal protection clause of the Fourteenth Amendment. It

is enough to say that we have substantial doubts about the validity of section 64-207.1 under those provisions also, and that we reserve to some future time as it may become necessary to discuss those contentions. Nor are we required to discuss the second issue above stated, that the statute cannot apply to an obvious falsehood.

Having determined that the statute which brought about the dismissal of plaintiff's suit is unconstitutional, we must send this cause back for further proceedings. In doing so, however, we are obliged to state, for guidance of the District Court, certain restrictions on libel suits and the damages obtainable therein which now apply. In doing so, we can perhaps obviate, or at least ease, the fears which will rise in the breasts of publishers, editors, and broadcasters upon publication of this opinion.

Although the United States Supreme Court has recognized that a state may provide for libel suits (Gertz v. Robert Welch Inc., supra), there has been a substantial development in cases from that court which is in itself a protection to publishers because it limits the right to damages. These restrictions on damages are in themselves a deterrent to the barrage of libel suits that publishers might otherwise fear.

The development begins with New York Times Co. v. Sullivan (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L Ed 2d 686, 95 ALR 1912. There, the United States Supreme Court found that the dissemination of news was so important that news media should be protected from libel judgments, and should also be shielded from their own "self-censorship" brought about by fear of libel suits. The Supreme Court held that a public official could not recover on a claim for defamation unless "actual malice" had been present. Implied or presumed

malice was out. "Malice" meant publication of the defaming material with a "knowledge that it was false, or with reckless disregard of whether it was false or not". The burden of proof was on the plaintiff to prove that kind of malice with convincing clarity. The court found that the First Amendment permitted, on public issues, vehement, caustic and sometimes unpleasantly sharp attacks on public officials.

In Garrison v. Louisiana (1964), 379 U.S. 64, 85 S.Ct. 209, 13 L Ed 2d 125, the New York Times rule was extended to a public official's private reputation, as well as his public reputation.

In Curtis Publishing Company v. Butts, and Associated Press v. Walker (1967), reported together in 388 U.S. 130, 87 S.Ct. 1975, 18 L Ed 2d 1094, reh.den. 389 U.S. 889 (1967), the court extended the New York Times rule to public figures. "Public figures" are defined in Gertz v. Robert Welch, Inc., supra:

> "* * * For the most part those who attain this status have assumed roles of a special prominence in the affairs of society. Some occupy positions of such persuasive power and influence that they are deemed public figures for all purposes. More commonly, those classed as public figures have thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved. In either event, they invite attention and comment." 418 U.S. at 345.

Finally, in Gertz v. Robert Welch, Inc., supra, the Supreme Court, while allowing states to provide for libel suits, erected a fence around the amount of damages recoverable:

> "We would not, of course, invalidate state law simply because we doubt its wisdom, but here we are attempting to reconcile state law with a competing interest grounded in the constitutional command of the First Amendment. It is therefore appropriate to require that state remedies for defamatory falsehood reach no

farther than is necessary to protect the
legitimate interest involved.  It is necessary
to restrict defamation plaintiffs who do not
prove knowledge of falsity or reckless disre-
gard for the truth to compensation for actual
injury.  We need not define 'actual injury,' as
trial courts have wide experience in framing
appropriate jury instructions in tort actions.
Suffice it to say that actual injury is not
limited to out-of-pocket loss.  Indeed, the
more customary types of actual harm inflicted
by defamatory falsehood include impairment of
reputation and standing in the community, per-
sonal humiliation, and mental anguish and suf-
fering.  Of course, juries must be limited by
appropriate instructions, and all awards must
be supported by competent evidence concerning
the injury, although there need be no evidence
which assigns an actual dollar value to the
injury.

"We also find no justification for allowing
awards of punitive damages against publishers
and broadcasters held liable under state-
defined standards of liability for defamation.
In most jurisdictions jury discretion over the
amounts awarded is limited only by the gentle
rule that they not be excessive.  Consequently,
juries assess punitive damages in wholly unpre-
dictable amounts bearing no necessary relation
to the actual harm caused.  And they remain
free to use their discretion selectively to
punish expressions of unpopular views.  Like
the doctrine of presumed damages, jury discre-
tion to award punitive damages unnecessarily
exacerbates the danger of media self-censorship,
but, unlike the former rule, punitive damages
are wholly irrelevant to the state interest
that justifies a negligence standard for pri-
vate defamation actions.  They are not compen-
sation for injury.  Instead, they are private
fines levied by civil juries to punish repre-
hensible conduct and to deter its future oc-
currence.  In short, the private defamation
plaintiff who establishes liability under a
less demanding standard than that stated by
New York Times may recover only such damages
as are sufficient to compensate him for actual
injury."  418 U.S. at 349, 350.

In this case, defendants have constantly referred to

Madison as a "public official", apparently to bring this

case under the umbrella of New York Times Co. v. Sullivan,

supra.  We are skeptical that the director of the print

shop at the University of Montana, Missoula, Montana, is

indeed a "public official".  In Gertz v. Robert Welch, Inc.,

supra, it was held that a lawyer was not a public official, although he had taken on a prominent case and was by virtue of his profession an officer of the court. Likewise, it may be contended in the retrial that Madison is a "public figure". Whatever his status, it is a question for the jury to determine, because of the constitutional provision that the jury under the instructions of the court is the judge of both law and fact. Article II, Section 7, 1972 Montana Constitution. With appropriate instructions, the jury can determine these matters and their status in any trial, unless otherwise stipulated.

In this case, therefore, applying the rationale of the cases of the United States Supreme Court on damages for libel, if Madison is considered to be a private person, he must prove: (1) that the published material was false; (2) that defendants are chargeable with fault in the publication; and (3) that actual injury to him ensued, for which he may recover his actual damages. Moreover, (4) if he proves that the publication was made by defendants with knowledge of its falsity or in reckless disregard for the truth or falsities thereof, he may recover punitive damages for such malice, but such malice does not include hatred, personal spite, ill-will, or a desire to injure. New York Times Co. v. Sullivan, supra; Letter Carriers v. Austin (1974), 418 U.S. 264, 94 S.Ct. 2770, 41 L Ed 2d 745.

If Madison is a public official or public figure, he may recover only if he proves the threshhold fact that the publication was made with knowledge of its falsity or reckless disregard for its truth or falsity. He could then recover his actual and punitive damages.

We now, therefore, reverse the judgment and order of dismissal of plaintiff's complaint by the District Court and remand the cause to the District Court for further proceedings, consonant with this opinion. Costs to the plaintiff.

_____
                Justice

We Concur:

_____
      Chief Justice

_____
      Justice

_____
Hon. Leonard H. Langen, District
Judge, sitting for Mr. Justice Harrison

_____
Hon. James M. Salansky, District
Judge, sitting for Mr. Justice Shea