No. 14891

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

EDWARD J. GALLAGHER,

Plaintiff and Appellant,

vs.

CHARLES G. JOHNSON,

Defendant and Respondent.

---

Appeal from: District Court of the Third Judicial District,
Honorable Gordon R. Bennett, Judge presiding.

Counsel of Record:

For Appellant:

Knight, Dahood, Mackay & McLean, Anaconda, Montana
Wade Dahood argued, Anaconda, Montana

For Respondent:

Gough, Shanahan, Johnson & Waterman, Helena, Montana
Ronald Waterman argued, Helena, Montana
Michael J McKeon, Anaconda, Montana

---

Submitted: February 27, 1980

Decided: MAY 21 1980

Filed: MAY 21 1980

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

The plaintiff-appellant, a public officer, filed a complaint in libel on June 2, 1978, in the District Court of the Third Judicial District, in and for the County of Deer Lodge. A motion to dismiss was filed by respondent on June 16, 1978. After submission of briefs on the motion the District Court denied the motion to dismiss and ordered appellant to file an amended complaint. Appellant filed his amended complaint on December 19, 1978. A motion to dismiss the amended complaint was filed by respondent on January 2, 1979. The matter was briefed, argued and the court granted respondent's motion to dismiss.

The decision of the District Court rested on legal questions only and at the pleading stage few facts were developed. Some background information is found in the record.

Appellant is a resident and native of Anaconda, Montana. Since 1970 he has been the Director of the Urban Development Agency for the City of Anaconda, agreed to be a public office.

Until his death, respondent also resided in Anaconda and was a self-employed businessman. Respondent was apparently well known for his outspoken views and criticism of the management of civic affairs in the City of Anaconda and Deer Lodge County. One way he expressed those views was to buy advertising space in the local newspapers where he would set forth his positions on a wide range of subjects.

The difficulties leading to this case arose when respondent began questioning actions of the Urban Renewal Development Agency personally and in his advertisements.

Appellant alleged in his amended complaint that he was a public officer and that respondent had made statements which were false, defamatory and circulated with the intent to affect the good name, reputation and occupation of appellant. He identified nine separate instances where statements were made which he considered to be libelous.

In its order dismissing the cause the District Court found that a number of the alleged libelous paragraphs were too vague to constitute libel per se and that there was some question whether the words set forth constituted libel by inference (per quod). The conclusion reached by the District Court was that each statement, construed in the light most favorable to appellant, constituted libel per quod, if the statements were libelous at all. Since no specific damages were alleged in the complaint, the District Court concluded no cause of action had been stated and the complaint was dismissed.

Appellant brings this appeal from the judgment of dismissal.

The issues presented for review by this Court concern whether the District Court erred in granting the motion for dismissal and, more specifically:

1. Whether a public official seeking to recover for alleged libelous or slanderous statements must plead special damages specifically beyond good name, reputation, and occupation, etc., if the statements are libel per quod and not susceptible of dollar and cents proof.

2. Whether actual malice must be specifically pleaded to satisfy the requirements of the First Amendment of the United States Constitution.

Appellant's contentions are:

1. Respondent's publications have been injurious to the person and occupation of the appellant and the complaint in its entirety sets out a sufficient claim of injury by defamation to warrant a jury trial to determine what remedy is appropriate.

2. Statements by the respondent set forth in paragraph IV (1) and (2) of the amended complaint constitute slander within section 27-1-803, MCA, and reference to Montana case law shows that this slander, if written, would constitute libel per se. Manley v. Harer (1925), 73 Mont. 253, 235 P. 757; Burr v. Winnett Times Pub. Co. (1927), 80 Mont. 70, 258 P. 242.

3. Paragraph V of appellant's amended complaint, alleging that respondent intended by his statement and publications to have the people of Deer Lodge County believe that appellant was dishonest, acted illegally and had been violating the law, was sufficient in this era of notice pleading to plead special damage by way of injury to appellant's occupation. As a public official whose effectiveness relies solely upon the public's confidence in his actions and intentions, appellant's damage cannot be measured in terms of lost contracts or personal business opportunities. Appellant, therefore, sufficiently pleaded special damages resulting from injury to him in his occupation to allow this cause to go before a jury.

4. Appellant in part V of his amended complaint alleged that respondent "knew that said words were untrue and in preparing, composing, and causing to be circulated said defamatory words . . . acted with specific malice . . ." The clear weight of authority has been found to show that

-4-

this allegation is sufficient to state the actual malice standard required by New York Times Co. v. Sullivan (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

5. The pleadings set forth by appellant in his amended complaint not only conform to the standards set in New York Times but also fulfill the requirements of Rule 9(b) M.R.Civ.P.

Respondent relies mainly on the argument that in Montana specific damages must be pleaded and proven to support a claim for libel per quod. Special damages must not only be suggested in the complaint but the facts constituting special damages "must be alleged or no cause of action is stated." Lemmer v. The "Tribune" (1915), 50 Mont. 559, 148 P. 338. Second, respondent contends the failure to allege the facts which constituted actual malice also warranted dismissal of the action. Regarding public officials, the First Amendment requires that before recovery for libel, the plaintiff must plead and prove the publication was false and was made with actual malice. New York Times, 376 U.S. at 279-80, 84 S.Ct. at 726, 11 L.Ed.2d at 706.

In Montana libel is defined as:

". . . a false and unprivileged publication by
writing, printing, picture, effigy, or other
fixed representation to the eye which exposes
any person to hatred, contempt, ridicule, or
obloguy or which causes him to be shunned or
avoided or which has a tendency to injure him
in his occupation." Section 27-1-802, MCA.

Slander is defined as:

". . .a false and unprivileged publication other
than libel which:

"(1) charges any person with crime or with having
been indicted, convicted, or punished for crime;

"(2) imputes in him the present existence of an
infectious, contagious, or loathsome disease;

-5-

"(3) tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires or by imputing something with reference to his office, profession, trade or business that has a natural tendency to lessen its profit;

"(4) imputes to him impotence or want of chastity; or

"(5) by natural consequence causes actual damage." Section 27-1-803, MCA.

The District Court in its memorandum presented a condensation of the case law on libel and slander in Montana which it used as a standard for judgment of this complaint, stating:

"For some reason, enshrouded by the mists of time and accretions of common law and the Field Code, a formal distinction is made in our code between libel and slander. (MCA 27-1-802 and 803.) Both are false and unprivileged publications which cause injury by defamation (including, specifically, the imputation of impotency in the case of slander). Beyond that, they are superficially different, but the differences are insignificant here. . . . 'Words are defamatory per se which upon their face and without the aid of extrinsic proof are injurious to the person concerning whom they are spoken.' Manley v. Harer, 73 M 258. They must be susceptible of but one meaning (Brown v. Independent Publishing Co., 48 M 380), and that an opprobrious one. (Burr v. Winnett Times, 80 M 75). If the words are not defamatory per se they cannot be made so by innuendo. . . . To determine whether the words constitute libel per se they must be construed in relation to the entire publication, which must in turn be viewed as a stranger might look at it, without the knowledge possessed by the parties concerned (Brown, supra, pg. 380). Their injurious character must be a fact of such common notoriety as to be established by the general consent of men so that the court takes judicial notice (Griffin v. Opinion Publishing Co., 114 M 508). In a word, the insult must be obvious.

"Generally, if the words are defamatory per se, damage is presumed and general damages may be recovered without allegation or proof of special damages (Paxton v. Woodward, 31 M 209). See discussion of exception that must be made in the case of alleged libel of public official, below. If the words are not defamatory per se facts must be pleaded which show the words are libelous and special damages must be specially pleaded, according to all the Montana cases from

-6-

Ledlie v. Wallen (1895) 17 M 155 to Steffes v.
Crawford (1963) 143 M 47. A complaint based on
per quod defamation fails to state a cause of
action if special damages are not alleged (Griffin,
supra, 508). Facts must be pleaded which show the
character and extent of the injury (Manley v.
Harer, 73 M 259). It is not enough, according to
the Montana cases, to aver generally that in con-
sequence of the publication the plaintiff has been
damaged in his business. The facts showing such
damages must be alleged or no cause of action is
stated (Lemmer v. The "Tribune", 50 M 565). While
there are no reported Montana cases on the subject,
there seems to be no reason why this state would
not follow the several states, apparently the un-
questioned majority, which find insufficient a
complaint based on per quod defamation resulting
in injury to business or profession which does not
state special pecuniary loss for which recovery is
sought. These states require allegations as to
particular contracts, sales, employments, etc.,
lost by reason of the defamation. See 53 CJS 272,
Libel & Slander, Section 170 (d) and 50 Am Jur 2d
945, Libel & Slander, Section 420. I gather from
a check on some of the cases cited under these
sections that relaxation of specificity require-
ments under modern pleading practice has not dis-
cernably altered this requirement. As noted, I
would apply all of the above principles without
discriminating between libel and slander plead-
ings." (Emphasis added.)

With the above ground rules in mind, the District Court

engaged in a paragraph-by-paragraph discussion of the amended

complaint and concluded that "all of the statements set

forth in the separate paragraphs of allegation #IV, together

with their associated allegations, constitute libel per

quod, if they are libelous at all, and must fail for lack

of allegation of specific damages." (Emphasis supplied.)

The District Court further concluded that even if all

the statements were clearly libel per se, the complaint

would fall short of stating a cause of action because no

specific facts were alleged to support the malice allega-

tion.

For some reason, which is also enshrouded by the mists

of very recent time, none of the parties presented for con-

sideration to the District Court the most recent case on

-7-

this subject, Madison v. Yunker (1978), ____ Mont. ____, 589 P.2d 126, 35 St.Rep. 1311, where this Court stated:

"Finally, in Gertz v. Robert Welch, Inc., supra, the Supreme Court, while allowing states to provide for libel suits, erected a fence around the amount of damages recoverable:

"'We would not, of course, invalidate state law simply because we doubt its wisdom, but here we are attempting to reconcile state law with a competing interest grounded in the constitutional command of the First Amendment. It is therefore appropriate to require that state remedies for defamatory falsehood reach no farther than is necessary to protect the legitimate interest involved. It is necessary to restrict defamation plaintiffs who do not prove knowledge of falsity or reckless disregard for the truth to compensation for actual injury. We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by competent evidence concerning the injury, although there need be no evidence which assigns an actual dollar value to the injury.

"'We also find no justification for allowing awards of punitive damages against publishers and broadcasters held liable under state-defined standards of liability for defamation. In most jurisdictions jury discretion over the amounts awarded is limited only by the gentle rule that they not be excessive. Consequently, juries assess punitive damages in wholly unpredictable amounts bearing no necessary relation to the actual harm caused. And they remain free to use their discretion selectively to punish expressions of unpopular views. Like the doctrine of presumed damages, jury discretion to award punitive damages unnecessarily exacerbates the danger of media self-censorship, but, unlike the former rule, punitive damages are wholly irrelevant to the state interest that justifies a negligence standard for private defamation actions. They are not compensation for injury. Instead, they are private fines levied by civil juries to punish reprehensible conduct and to deter its future occurrence. In short, the private defamation plaintiff who establishes liability under a less demanding standard than that stated by New York Times may recover only such damages as are sufficient to compensate him for actual injury.' 418 U.S. at 349, 350, 94 S.Ct. at 3012.

"In this case, defendants have constantly re-
ferred to Madison as a 'public official', ap-
parently to bring this case under the umbrella
of New York Times Co. v. Sullivan, supra. We
are skeptical that the director of the print
shop at the University of Montana, Missoula,
Montana, is indeed a 'public official'. In
Gertz v. Robert Welch, Inc., supra, it was held
that a lawyer was not a public official, although
he had taken on a prominent case and was by vir-
tue of his profession an officer of the court.
Likewise, it may be contended in the retrial that
Madison is a 'public figure'. Whatever his
status, it is a question for the jury to deter-
mine, because of the constitutional provision
that the jury under the instructions of the court
is the judge of both law and fact. Article II,
Section 7, 1972 Montana Constitution. With ap-
propriate instructions, the jury can determine
these matters and their status in any trial, un-
less otherwise stipulated.

"In this case, therefore, applying the rationale
of the cases of the United States Supreme Court
on damages for libel, if Madison is considered
to be a private person, he must prove:  (1) that
the published material was false; (2) that de-
fendants are chargeable with fault in the publi-
cation; and (3) that actual injury to him ensued,
for which he may recover his actual damages.
Moreover, (4) if he proves that the publication
was made by defendants with knowledge of its
falsity or in reckless disregard for the truth
or falsities thereof, he may recover punitive
damages for such malice, but such malice does
not include hatred, personal spite, ill-will or
a desire to injure. New York Times Co. v. Sul-
livan, supra; Letter Carriers v. Austin (1974),
418 U.S. 264, 94 S.Ct. 2770, 41 L.Ed.2d 745.

"If Madison is a public official or public
figure, he may recover only if he proves the
threshhold fact that the publication was made
with knowledge of its falsity or reckless dis-
regard for its truth or falsity. He could then
recover his actual and punitive damages." (Em-
phasis added.)  589 P.2d at 132-33.

Madison has adequately stated Montana's position on the

two legal problems presented here.  We have adopted the

position of New York Times v. Sullivan, supra.

Since New York Times was decided by the United States

Supreme Court in 1964, a defendant in a libel action has

been accorded an additional First Amendment protection in

the making of defamatory statements concerning public offi-

cials. Unless he made them with "malice," that is to say that unless he knows the statements to be false, or makes them with reckless disregard for the truth, or in fact entertained serious doubts about their truth, or had a high degree of awareness of their probable falsity, he will not be held liable in a libel action. Such malice does not include hatred, personal spite, ill will, or desire to injure.

The District Court here, in following New York Times and its progeny, correctly held that it is incumbent upon appellant here to prove actual malice if he is a public official. He went one step farther, however, and ruled that appellant also had to plead the facts to support the conclusion that the defamation was knowingly and/or recklessly published. In his memorandum, the District Court gave the following rationale for the above ruling:

> "The working principle I would rely on was stated by the Idaho Supreme Court before the Sullivan case. Gough v. Tribune-Journal Company, 1954, 275 P2d 663, 667, 668."

New York Times v. Sullivan, supra, does not require the additional pleading of the supportive fact, nor does Montana. See, Madison v. Yunker, supra; Rule 9, M.R.Civ.P. Therefore, the additional requirement is in error.

On the second issue concerned with the pleading of special damages under the circumstances of this case, this Court had never specifically ruled on the matter before Madison. It has been well cared for in that opinion.

On the matters before this Court, we find appellant has met the proper standard of pleading his cause.

Therefore, the judgment and order of dismissal of plaintiff-appellant's complaint by the District Court is

reversed, and the cause remanded to the District Court for further proceedings, consonant with this opinion. Costs to appellant.

_____
Justice

We concur:

_____
Chief Justice

_____

_____
Justice

Mr. Justice Daniel J. Shea dissents, and will file a written dissent later.

-11-