No. 90-268

IN THE SUPREME COURT OF THE STATE OF MONTANA

1990

SIDNEY P. KURTH,

       Plaintiff and Appellant,

-v-

GREAT FALLS TRIBUNE COMPANY and
COWLES MEDIA COMPANY, its parent
company,

       Defendants and Respondents.

FILED

JAN 1 0 1991

CLERK OF
STATE C

APPEAL FROM:   District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable R.D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    James Graves; Stephens & Graves; Billings, Montana

    For Respondents:

    Peter Michael Meloy, Helena, Montana

            Submitted on Briefs: November 15, 1990

                 Decided: January 10, 1991

Filed:

                     Clerk

Justice Fred J. Weber delivered the Opinion of the Court.

The plaintiff, Sidney P. Kurth (Kurth) brought this action for defamation in the Eighth Judicial District, Cascade County, seeking damages suffered as a result of an article published by the defendant, Great Falls Tribune (Tribune). The District Court granted summary judgment in favor of the Tribune. We reverse and remand for further proceedings consistent with this opinion.

The issues presented are:

1. Did the District Court err when it determined that Kurth is a public figure as a matter of law?

2. If Kurth is a public figure, did the Tribune act with actual malice?

Kurth brought this action against the Tribune for defamation arising out of a newspaper article which appeared in the Tribune on February 3, 1984. The article reported that Kurth was sought for at least nine "criminal" charges. The falsity of the publication was acknowledged by retraction on December 14, 1985.

The article was one of a series of news stories arising out of the activities of Multi-Management Corporation (MMI) and its principles, including an MMI corporate officer, Karl Herrman, and MMI's legal counsel, Sidney Kurth. In early February of 1984, a local Great Falls television station reported that Herrman and Kurth had been evicted from their London apartment where they were purportedly staying while attempting to negotiate a $350 million loan in behalf of MMI to build a large grain processing plant in Great Falls. A reporter for the Tribune was assigned to watch the

2

television news report and write a story for the next morning's paper. The reporter watched the television report and wrote the story which is the subject of this lawsuit. The story reported the eviction of Herrman and Kurth. In deposition, the reporter testified he was certain that the television report mentioned other Kurth "charges" but was unable to remember whether the story characterized them as "criminal."

As background for the story, the reporter read a number of previous stories on the MMI activities and the troubles associated with the principles of MMI. Because the reporter was close to deadline, he failed to verify that Kurth was sought for "criminal" charges.

Kurth seeks special damages for loss of income, impairment of employability, and loss of professional standing as an attorney in a sum to be determined at time of trial. He also seeks general compensatory damages and punitive damages.

Did the District Court err when it determined that Kurth was a public figure as a matter of law?

A summary of the history of defamation law in the United States, and in particular in Montana, is in order.

There are two status categories that have emerged in United States Supreme Court decisions that determine the amount of fault that plaintiff must prove in order to recover in a defamation suit. If the plaintiff was a public figure at the time of the alleged libel, then he cannot recover unless he can show the

statement was made with actual malice. New York Times v. Sullivan (1964), 376 U.S. 254, 279-280. Public figures are subdivided into two subcategories, public figures for all purposes and public figures for a limited purpose. All purpose public figures have achieved such pervasive fame and notoriety that they become public figures for all purposes and in all contexts. Limited purpose public figures have voluntarily injected themselves or were drawn into a particular public controversy and thereby become public figures for that limited range of issues. Gertz v. Robert Welsh, Inc. (1974), 418 U.S. 323. In either case, public figure plaintiffs must show the statement was made with actual malice which means it was published "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times, 376 U.S. at 280.

The second status category is that of private figures. This category has also been divided into two subcategories by the United States Supreme Court. A private figure is usually not involved in any matter of public concern. However, a private figure may be involved in a matter of public concern and remain a private figure. Milkovich v. Lorain Journal Co., (1990), 110 S.Ct. 2695, 2704, 2707, 111 L.Ed.2d 1, 15, 19. A private figure must show some degree of fault to recover from a publisher or broadcaster but does not have to prove actual malice except to recover presumed or punitive damages. Gertz v. Welch, 418 U.S. 323, 347, 349.

In the case at bar, the controversy is a matter of public concern as evidenced by the news media coverage of MMI's activities

4

over a period of several years. The issue is whether Kurth became a public figure through his involvement with MMI or whether he remained a private figure throughout. An attorney does not become a public figure merely because he represents a client who is of concern to the public. Gertz, 418 U.S. 323; Madison v. Yunker (1978), 180 Mont. 54, 66, 589 P.2d 126, 133. The District Court determined that Kurth was involved with MMI as more than an attorney and had become a public figure as a matter of law. Private figures become public figures when they "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved." Gertz, 418 U.S. at 345.

In Montana, questions of law, as well as questions of fact, are questions for the jury in libel and slander cases.

> In Gertz v. Robert Welch, Inc., supra, it was held that a lawyer was not a public official, although he had taken on a prominent case and was by virtue of his profession an officer of the court. Likewise, it may be contended in the retrial that Madison is a "public figure." Whatever his status, it is a question for the jury to determine, because of the constitutional provision that the jury under the instructions of the court is the judge of both law and fact. Article II, Section 7, 1972 Montana Constitution. With appropriate instructions, the jury can determine these matters and their status in any trial, unless otherwise stipulated. (Emphasis supplied.)

Madison v. Yunker (1978), 180 Mont. 54, 66, 589 P.2d 126, 133.

Article II, Section 7 of the 1972 Montana Constitution states:

> **Section 7. Freedom of speech, expression, and press.** No law shall be passed impairing the freedom of speech or expression. Every person shall be free to speak or publish whatever he will on any subject, being responsible for all abuse of that liberty. In all suits and prosecutions for libel or slander the truth thereof may be given in evidence; and the jury, under the

direction of the court, shall determine the law and the facts. (Emphasis supplied.)

For a jury to determine the law is unique to libel and slander cases, and has been a part of Montana constitutional law since the Constitution was first adopted in 1889. In Griffin v. Opinion Publishing Co. (1943), 114 Mont. 502, 512, 138 P.2d 580, 586, this Court interpreted the provision by stating:

> While our Constitution like that of Missouri, Colorado, South Dakota and Wyoming provides that in libel suits "the jury, under the direction of the court, shall determine the law and the facts," yet the decisions clearly show that the function of the court and jury is not greatly different in the trial of libel from what it is in other cases.
> In other words, it is for the court and not the jury to pass upon demurrers to the complaint; upon the admissibility of the evidence; upon motions for nonsuit; upon motions for a directed verdict; upon motions for a new trial and upon motions to set aside verdicts or vacate judgments."

In Williams v. Pasma (1982), 202 Mont. 66, 656 P.2d 212, this Court held that it is also appropriate for the court to grant summary judgment in libel and slander cases when there are no material issues of fact and the evidence supports the judgment as a matter of law.

That is not the situation with the case at bar. In its Opinion and Order dated March 30, 1990, the District Court listed the following factors on which it based its finding that Kurth is a public figure as a matter of law:

This Court bases its findings upon the following:

(1) Mr. Kurth was the registered agent, assistant secretary, director and incorporator in 1979 of International Food and Fuel Manufacturing Co., Inc. This corporation was consolidated with Multi-Management, Inc. (Exhibit 5 to Defendant's motion for summary judgment and

6

Sidney Kurth Deposition p. 9). Sidney Kurth was representing I.F.F. at a presentation to raise money for a grain processing plant. This process was taken over by Multi-Management when the consolidation with I.F.F. occurred. In the process of consolidation, Sidney Kurth became an attorney for Multi-Management together with Karl Herrman, Sr. Plaintiff Kurth became a shareholder in Multi-Management, Inc. and served on committees for Multi-Management. He was unsure whether he had ever been an officer in MMI. (Kurth Deposition p. 9-10)

(2) The Multi-Management story was a newsworthy item in the Great Falls area from the beginning. (Exhibits 7, 8, 9, 10, 12, 13, 14) (Sweeny Deposition p. 19)

(3) On February 19, 1982, the State Auditor's office filed suit in district court in Great Falls charging MMI and its various agents and representatives with violations of the State's securities laws. The violations charged included both registration violations and fraudulent practices. A temporary restraining order was issued on February 19, 1982 prohibiting further sales of securities by Multi-Management, Inc. and its agents and representatives and prohibiting Multi-Management and its agents and representatives from attempting to raise money. On August 25, 1982, Judge McCarvel ordered MMI officials to show cause why they should not be held in contempt for violation of the restraining order (CDV-82-171).

(4) Among the violations charged by the State Auditor was the issuance, on May 12, 1982, of stock certificates to Sidney Kurth. The State Auditor further alleged that on May 12, 1982, Karl Herrman had, in Sidney Kurth's offices in Billings, Montana, issued stock to various other persons. (CDV-82-171)

(5) On October 13, 1982, Judge Roth entered his Findings of Fact and Conclusions of Law finding Karl Herrman, Jr. in contempt of Court. (CDV-82-171)

(6) Sidney Kurth and Karl Herrman, Jr., were in Europe at this time attempting to secure financing for Multi-Management, Inc. Sidney Kurth and Karl Herrman, Jr. remained in Europe for a period of two (2) years meeting with various European and Arab sources attempting to secure loans. (Kurth Deposition p. 10-40) While there, Sidney Kurth ran up a bill of $66,000.00 on his personal credit card for expenses. (Kurth Deposition, p. 39)

(7) In February of 1983, Sidney Kurth's law firm in Billings was closed due to Mr. Kurth's Multi-Management

7

activities. Mr. Kurth was no longer named as a partner or associate.

(8) In June of 1983, Kurth was sued by a client for malpractice. He was also the subject of a number of actions for debt collection.

(9) In 1983, Multi-Management, Inc. and Multi-Management officers Karl Herrman, Jr., Warren Hill, and Robert Montforten were indicted by a federal grand jury. (United States District Court for the District of Montana, Great Falls Division CR-83-42-GF)

In determining whether Kurth became a public figure or remained a private figure, the factfinder must look to the nature and extent of his participation in the particular controversy giving rise to the defamation. Gertz, 418 U.S. at 352. Factors 1-6 and 9, as listed by the District Court, may be evidence that the MMI story was a matter of public concern but the trier of fact must establish if and how Kurth was involved to the degree required to make him a public figure and not merely a private figure who was representing his client. Factors 7 and 8 and the last sentence of factor 6 are irrelevant because no facts were presented showing these factors were ever a matter of public knowledge.

Rule 52(a), M.R.Civ.P., in relevant part states:

. . . Findings of fact and conclusions of law are unnecessary on decisions of motions under Rules 12 or 56 or any other motion except as provided in Rule 41(b). However, any order of the court granting a motion under Rules 12 or 56 which is appealable to an appellate court shall specify the grounds therefor with sufficient particularity as to apprise the parties and the appellate court of the rationale underlying the ruling and this may be done in the body of the order or in an attached opinion. The court may require any party to submit proposed findings of fact and conclusions of law for the court's consideration and the court may adopt any such proposed findings or conclusions so long as they are supported by the evidence and law of the case. (Emphasis added.)

8

The District Court's factors do not specify with sufficient particularity the rationale underlying its ruling that Kurth is a public figure as a matter of law to support a summary judgment. In addition, our review of the record convinces this Court that a genuine issue of material fact does exist as to whether Kurth became a public figure for a limited purpose or remained a private figure involved in a matter of public concern. We conclude that under both Rule 52(a) and Article II, Section 7 of the Montana Constitution there remain issues of material fact for determination by a jury.

We hold that the District Court erred when it determined that Kurth was a public figure as a matter of law. Since our holding disposes of the appeal there is no need to address whether the Tribune acted with actual malice.

We reverse and remand for further proceedings consistent with this opinion.

_____
Justice

We Concur:

_____
J. A. Turnage
Chief Justice

_____
John Conway Harrison

_____
Diane G. Barz

_____
John C. Sheehy

_____
William E. Hunt

_____
R. C. McDonough
Justices