Kurth v. Great Falls Tribune Co.
Decided July 16, 1998
(NOT TO BE CITED AS AUTHORITY)

No. 97-546

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 178N

SIDNEY P. KURTH,

Plaintiff and Appellant,

v.

GREAT FALLS TRIBUNE COMPANY, et al.,

Defendants and Respondents.

APPEAL FROM:   District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Peter L. Rapkoch, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Robert L. Stephens, Jr., R. L. Stephens, Ltd.,

Billings, Montana

For Respondents:

Peter Michael Meloy; Meloy & Morrison, Helena,

Montana

Robert C. Bernius; Nixon, Hargrave, Devans & Doyle,

Washington, D.C.

Submitted on Briefs: April 23, 1998

Decided:   July 16, 1998

JUSTICE GRAY delivered the Opinion of the Court.

¶1   Pursuant to Section I, Paragraph 3(c), Montana Supreme Court 1996 Internal Operating Rules, the following decision shall not be cited as precedent but shall be filed as a public document with the Clerk of the Supreme Court and shall be reported by case title, Supreme Court cause number, and result to the State Reporter Publishing Company and to West Group in the quarterly table of noncitable cases issued by this Court.

¶2   Sidney P. Kurth (Kurth) appeals from the judgment entered by the Eighth Judicial District Court, Cascade County, on its findings of fact, conclusions of law and order in his defamation action against the Great Falls Tribune Company and Cowles Media Company (collectively, Tribune) and from its denial of his motion to amend with regard to damages.  We affirm.

¶3   We address the following issues on appeal:

¶4   1.  Did the District Court abuse its discretion in admitting expert testimony on the impact of the libelous article for a limited purpose only and compound its error by entering findings and conclusions contrary to the weight of scientific evidence?

¶5   2.  Is the District Court's award of damages inadequate as a matter of law?

¶6   Kurth was a successful Montana attorney who enjoyed a good reputation for his abilities as a lawyer, particularly in the fields of taxation, business, agricultural and real estate law.  He traveled extensively in connection with his representation of various clients and, by the early 1980s, had become actively

involved in an agri-business group called IFF which was interested in establishing a grain processing plant in Great Falls, Montana. In 1982, IFF merged with another corporation into Multi-Management, Inc. (MMI), which was headed by Karl Herrmann (Herrmann). Kurth became a director and stockholder of MMI and acted as its attorney. Thereafter, Kurth was in Europe on MMI business for an extended period of time; during that time, his law practice closed and the closure was covered by both the Tribune and the Billings Gazette.

¶7   The Tribune is the principal newspaper in Great Falls and it also is distributed statewide; its daily circulation during the times at issue was approximately 33,000. The Tribune followed events surrounding the grain processing plant efforts closely and published numerous articles on the subject. On February 3, 1984, the Tribune published, on the third page of Section B of the newspaper, an article concerning Herrmann, MMI and others which was written by a Tribune reporter who was still in high school. The third paragraph of the article contained a statement that "[Herrmann's] associate, Sidney Kurth, is sought for at least nine criminal charges." The statement was not true.

¶8   Approximately 22 months later, Kurth's attorney demanded that the Tribune print a correction and compensate Kurth for the libel contained in the sentence quoted above. The Tribune printed a correction admitting the falsity of the sentence about a week later, but it did not compensate Kurth.

¶9   Kurth subsequently filed a complaint against the Tribune for libel. Thereafter, the District Court granted the Tribune's motion for summary judgment, concluding that Kurth was a public figure as a matter of law. Kurth appealed and we reversed and remanded for further proceedings, concluding that genuine issues of material fact existed regarding whether Kurth became a public figure for a limited purpose or remained a private figure involved in a matter of public concern. Kurth v. Great Falls Tribune (1991), 246 Mont. 407, 413, 804 P.2d 393, 397.

¶10  On remand, the District Court bifurcated the public figure question and held a bench trial. The court concluded that Kurth was not a public figure during the times at issue.

¶11  Prior to the bench trial on remaining issues, the Tribune objected to the admissibility of  deposition testimony by Professor Maxwell McCombs (McCombs), an expert retained by Kurth.  McCombs, a journalism professor from Texas, had performed a "content" and "agenda setting" analysis of various Tribune stories and determined therefrom that the story at issue would have had a greater impact on Kurth's reputation and the way people remembered him because of the context in which the story appeared.  After full briefing on the Tribune's objections, the District Court determined that the deposition testimony was admissible as "specialized knowledge" which would aid the trier of fact pursuant to Rule 702, M.R.Evid. The court also determined that an affidavit by McCombs, which set forth the scientific validity of his "content analysis" for Daubert purposes, was not admissible and, as a result, that the deposition was not admissible as scientific evidence because it lacked a scientific basis.  Shortly thereafter, the District Court reversed its ruling and determined that McCombs' deposition testimony would not be admitted.  Later, the court again reversed itself and admitted the deposition and McCombs' related report for the limited purpose of its use by Kurth's damages expert.

¶12  After the bench trial in November of 1996, the District Court entered its findings, conclusions and order determining that the Tribune article in question was libelous per se and that it was published with reckless disregard for its truth or falsity.  The court also found, however, that the article had only minimal effect on Kurth's reputation and that the decline in Kurth's income and damage to his reputation were caused by the way he conducted his practice.  It awarded Kurth $2,000 as presumed damages for the libel and entered judgment accordingly.

¶13  Kurth filed a motion to amend and for a new trial.  The District Court entered an order amending its judgment by taxing certain costs against the Tribune, but denying all other relief requested by Kurth.  Notice of entry of judgment was filed and Kurth timely appealed.

¶14  1.  Did the District Court abuse its discretion in admitting expert testimony on the impact of the libelous article for a

limited purpose only and compound its error by entering findings and conclusions contrary to the weight of scientific evidence?

¶15  As set forth above, the District Court ultimately admitted the McCombs deposition for the limited purpose of reliance thereon by Dr. Ann Adair, Kurth's expert witness on damages.  Kurth contends that the court abused its discretion in excluding the deposition for purposes of proving the impact of the libelous Tribune article because the content analysis meets the Daubert standard for scientific evidence.  Kurth relies on McCombs' affidavit, which purported to establish the scientific validity of the content analysis he had performed, as support for this contention.  As set forth above, however, the District Court ruled that affidavit inadmissible, and Kurth has not appealed that determination.  Since Kurth points to no other evidence of record which purports to show that McCombs' deposition testimony met the Daubert criteria for admissibility as scientific evidence, he has failed to establish error by the District Court in excluding the evidence under Daubert.

¶16  In any event, however, no error can be predicated on an evidentiary ruling unless a substantial right of the party is affected.  Rule 103(a), M.R.Evid.  Here, even assuming arguendo that the District Court erred in excluding the McCombs deposition for purposes of proving the impact of the libelous Tribune story on Kurth's reputation, that error did not affect any of Kurth's substantial rights.

¶17  The District Court was the trier of fact in this case and one of the facts at issue was the effect of the libelous story on Kurth's reputation and income.  The court made it clear that it had not merely read the deposition, but studied it, and found it "not helpful."  As the court stated, "[w]e're not dealing with chemistry or with things like that . . . , we're dealing here with language.  And language, gentlemen, is our stock and trade."  The court reiterated several times that, even taking the Rule 702, M.R.Evid., "specialized knowledge" factor into consideration, McCombs' deposition simply was not helpful to it in understanding the evidence.  Moreover, the court observed that it had direct knowledge concerning the readership of the Tribune and the persons

who would be affected by the article and that McCombs' lack of Montana knowledge or experience and his map-based approach for demographic conclusions rendered his testimony fatally weak. P18 On this record, it is clear that, even if the McCombs deposition had been admitted, it would have been given little or, more likely, no weight by the trier of fact. Thus, we conclude that any error in excluding the McCombs deposition was harmless and not reversible.

¶19 Finally, we observe that, while Kurth also argues in his first issue that the District Court erred by entering findings of fact and conclusions of law contrary to the weight of scientific evidence, he does not separately argue this matter or cite to authorities in support thereof. In any event, however, since no "scientific evidence" was admitted, and Kurth has failed to establish error in that regard, he cannot prevail on his argument that the District Court entered findings and conclusions contrary to the weight of scientific evidence.

¶20 2. Is the District Court's award of damages inadequate as a matter of law?

¶21 The District Court entered extensive findings of fact relating to the causes of the damage to Kurth's reputation over the time period at issue. On the basis of those findings, it ultimately concluded that "[t]he actual damage to Plaintiff's reputation as a lawyer was not caused by the sentence in the Tribune February 3, 1984 article but by his conduct of his practice, as described in the Findings of Facts" and awarded Kurth presumed damages in the amount of $2,000.

¶22 Kurth subsequently filed a motion to amend arguing, in part, that the District Court erred in its assessment of damages by--inter alia--failing to accept his damage expert's testimony which was based on McCombs' conclusion that Kurth's losses were caused by the Tribune article at issue and finding that other causes were the source of damage to Kurth. The District Court denied the damages-related portion of Kurth's motion to amend and Kurth asserts error in that regard.

¶23  A trial court's ruling on a motion to amend, like its other rulings on posttrial motions,   is reviewed for manifest abuse of discretion.  See Allers v. Riley (1995), 273 Mont. 1, 4,   901 P.2d 600, 602 (citations omitted).  Here, however, the court's ruling specifically was based on "the reasons already set forth in the Court's Findings and Conclusions" and, therefore, Kurth's argument that the damages were inadequate as a matter of law is, in essence, a challenge to the District Court's findings of fact regarding causation and damages.  We review a district court's findings of fact to determine whether they are clearly erroneous.  A finding is clearly erroneous if it is not supported by substantial evidence, if the trial court misapprehended the effect of the evidence, or if this Court is left with the definite and firm conviction that a mistake has occurred.  Interstate Production Credit v. DeSaye (1991), 250 Mont. 320, 322-23, 820 P.2d 1285, 1287 (citations omitted).

¶24  Kurth raises a number of arguments regarding the damage award. He argues, for instance, that the District Court erred in rejecting his expert's testimony on damages sustained as a result of the Tribune article after admitting McCombs' deposition testimony as foundation for her testimony.  What Kurth fails to understand in this regard is that, the District Court having rejected McCombs' deposition testimony as proof of the causal link between the article and Kurth's purported damages, his expert's testimony that she assumed  the article caused all of Kurth's damages essentially rendered her accounting of those damages of no value to the trial court.

¶25  Kurth also reiterates his arguments about the District Court rejecting McCombs' "scientific evidence" under this issue.  We concluded above, however, that no basis existed on the record to admit the McCombs deposition as scientific evidence and that, even if admissible, the exclusion of the deposition was harmless error. We need not address those matters again here.

¶26 Kurth further argues that his own testimony "regarding his inability to reestablish his practice, his own embarrassment and chagrin, and his anger over the libelous article" was more than adequate evidence to establish the damages he sought.  As noted

above, however, our first consideration in reviewing a trial court's findings of fact is whether they are supported by substantial evidence. See Interstate Production Credit, 250 Mont. at 323, 820 P.2d at 1287. Our standard is not to determine whether evidence of record would support different findings.

¶27 The testimony Kurth relies on to support his argument that the damages awarded were inadequate ignores the District Court's extensive findings regarding the lack of causation between the article at issue and his damages, including that Kurth was already "financially beleaguered" by the time of the Tribune article as a result of the grain processing venture and numerous other civil difficulties, his extended absences from his law offices on sojourns to China, Europe and other states, and publicized malpractice actions by former clients. After reviewing the record, we conclude that those findings are supported by substantial evidence and are not otherwise clearly erroneous.

¶28 Kurth essentially asks this Court to reweigh the evidence presented at trial--and determine the credibility of his witnesses--in his favor in order to produce a result more advantageous to him. The weighing of evidence and the credibility of witnesses are matters within the province of the finder of fact, however, and we will not substitute our judgment for that of the factfinder--here, the District Court--on such matters. See Werre v. David (1996), 275 Mont. 376, 391, 913 P.2d 625, 635.

¶29 Finally, Kurth asserts legal error by the District Court in failing to conduct an appropriate causation analysis under Busta v. Columbus Hosp. Corp. (1996), 276 Mont. 342, 916 P.2d 122, and its progeny. According to Kurth, Busta stands for the proposition that he need only prove that the act at issue--here, the publication of the libelous article--was a substantial factor in bringing about the damage or injury.

¶30 Even assuming arguendo that Kurth properly characterizes Busta and that the causation conclusions we reached in that negligence case are applicable in this libel and defamation action, Busta is of no assistance to Kurth here. While it is clear that the District Court did not perform a Busta-type causation analysis, it

is equally clear that the court's findings regarding causation constitute a finding that the Tribune article was not a substantial factor in bringing about his damage or injury.  We upheld the District Court's findings in that regard above and, therefore, need not address those matters again here.

¶31  We hold that the District Court's causation and damage-related findings are not clearly erroneous, the court did not abuse its discretion in denying the damages portion of Kurth's motion to amend, and the damages awarded are not inadequate as a matter of law.

¶32  Affirmed.

/S/  KARLA M. GRAY

We concur:
/S/  J. A.  TURNAGE
/S/  JAMES C. NELSON
/S/  JIM REGNIER
/S/  WILLIAM E. HUNT, SR.